STATE of Minnesota, Appellant,

v.

Kenneth SCHWEICH, Respondent.

No. C3–87–1005.

Court of Appeals of Minnesota.

Oct. 27, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, James A. Terwedo, Scott Co. Atty., Kathryn A. Santelmann, Asst. Scott Co. Atty., Shakopee, for appellant.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for respondent.

Considered and decided by SEDGWICK, P.J., and PARKER and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

This is an appeal from an order suppressing physical evidence of cocaine and drug paraphernalia and also suppressing appellant's inculpatory statements admitting ownership of these items. The state attempted to introduce this evidence in connection with charges against respondent of possession of cocaine and drug paraphernalia. After an omnibus hearing, the trial court found that the state had used deceit and misrepresentation to obtain respondent's consent to a warrantless search of his apartment. Consequently, the trial court found respondent's consent was invalid and suppressed all physical evidence obtained by the search. The trial court also suppressed evidence of respondent's inculpatory statements, finding that they were the fruits of the illegal search. We affirm.

## FACTS

Respondent rented the downstairs area of a house owned by Kathy Hynes, who lived on the main floor with her children. Respondent had fallen behind in the rent and this had created hard feelings between him and Hynes's boyfriend, Gary Nemitz a/k/a "Spider."

On the afternoon of February 25, 1987, during the course of an argument between respondent and Spider about the rent, Spider threatened respondent by pointing a rifle at him. Soon after this incident, respondent telephoned the police and reported he had been threatened with a weapon. Four police officers responded at approximately 5:00 p.m.

Officer Michael Marben met respondent outside the house and took him to his squad car. Respondent told Marben the details of the incident and gave other background information about Hynes, Spider and himself.

Meanwhile, Spider was apprehended by two other officers within a block of the house. Ammunition was found on him but no weapon. Spider told the officers that they should tell respondent he (Spider) wanted to kill him (respondent). He also stated that respondent had drugs in his bedroom.

After Spider's arrest, one of the officers, Sergeant Robert Boe, continued to search for Spider's weapon but was unable to locate it. Boe returned to the squad car where Marben and respondent were seated. Speaking to Marben, Boe indicated plans to search the house for Spider's weapon and asked Marben to obtain respondent's consent.

Before Marben discussed the consent form with respondent, respondent volunteered the information that he himself owned a .357 Ruger pistol, which was used for target practice, was loaded, holstered, and located on a window ledge in his bedroom.[1]

Marben read the entire search consent form to respondent and had respondent read at least a portion back to him. Marben explained that obtaining Spider's weapon was important in order to charge Spider

---

1. Respondent apparently volunteered this information because he thought Spider might have alleged that respondent had threatened Spider with the pistol. Spider in fact had made no such allegation at this time.

with a more severe degree of assault. Respondent signed the consent form.

The parties dispute whether Marben told respondent they would be looking for anything other than the weapons of Spider and respondent. The trial court found that (1) Marben told respondent they would look for Spider's rifle; (2) the consent form authorized a complete search of the premises; and (3) the consent form also authorized the officers to take evidence for criminal prosecution in the case or cases under investigation. Appellant concedes that the only case "under investigation" was Spider's alleged assault against respondent. Respondent did not know the officers suspected he possessed drugs when he signed the consent form.

Subsequently Marben and Boe obtained Hynes's written consent to search the rest of the house. Boe and Detective Gregory Zollner began the search and Marben remained in the squad car with respondent. Zollner testified that they were searching for guns and ammunition but would "obviously keep their eyes open" for drugs.

Upon Hynes's direction, the officers located Spider's rifle (which had previously been described by respondent) and ammunition under the bed in Hynes's son's room. A search of the rest of the bedroom revealed nothing.

Hynes next led the officers to respondent's bedroom where, pursuant to respondent's directions, they recovered his pistol. Zollner left respondent's bedroom and returned to Marben and respondent in the squad car. Zollner requested that Marben take respondent to the station to get his statement on the assault charge. It was approximately 6:00 p.m. when Marben and respondent went to the station.

Meanwhile, Boe continued searching respondent's room and found a large duffel bag four to five feet from the window ledge where the pistol was found. The bag was unzipped and contained scuba gear. Finding nothing of consequence in the main open area of the bag, Boe unzipped a small pocket on the inside and found cocaine in a zip-lock bag, as well as various drug paraphernalia.

Upon arrival at the police station, Marben read respondent his Miranda rights and had respondent sign a standard Miranda warning acknowledgment form. However, at that time Marben did not indicate to respondent that he was under arrest or that he was under investigation. Marben also took respondent's statement concerning the assault charge.

At approximately 7:00 p.m., Boe and Zollner returned to the station, met alone with Marben, and told him to book respondent on charges of possession of cocaine and drug paraphernalia.

Prior to booking respondent, Boe informed him that cocaine had been discovered in the diving bag. Respondent readily admitted that he owned the cocaine and paraphernalia. Boe then informed respondent he was under arrest. As respondent was being escorted to jail, he told Boe that the cocaine was no good because it was "cut." Respondent was subsequently charged with possession of cocaine and drug paraphernalia in violation of Minn. Stat. §§ 152.01, subd. 10(1), 152.02, subd. 3(1)(d), 152.09, subd. 1(2), 152.092 and 152.-15, subd. 2(1) (1986).

## ISSUES

1. Did the trial court err in suppressing evidence of cocaine and drug paraphernalia found in a consensual but warrantless search of respondent's apartment?

2. Did the trial court err in suppressing evidence of respondent's inculpatory statements given by respondent when confronted by police who told him they had just found incriminating evidence in his apartment?

## ANALYSIS

1. *Suppression of Physical Evidence*

The first question we must address is whether respondent limited his consent to less than a full search of his belongings. The second question is whether the police exceeded the scope of their authorized search.

### Extent of search authorized

■ To justify a warrantless search based on voluntary consent, the state must prove the consent was freely and voluntarily given. *Bumper v. State of North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). Voluntariness of consent is a finding of fact made by the trial court after considering the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). Because the trial court is obviously in the better position to assess the credibility of the witnesses, the state on appeal must show clearly and unequivocally that the trial court erred in finding that consent was involuntary. *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977); *State v. Auman*, 386 N.W.2d 818, 820 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. July 16, 1986).

Misrepresentation used to obtain consent to a search will invalidate the consent. *United States v. Briley*, 726 F.2d 1301, 1304 (8th Cir.1984); *United States v. Turpin*, 707 F.2d 332, 335 (8th Cir.1983). The state argues that Marben did not misrepresent the purpose of the search, but simply failed to inform respondent of an *additional* purpose for the search (to look for drugs).

■ Tacit misrepresentation of the purpose of a search can rise to such a level of deception to invalidate the consent. *United States v. Tweel*, 550 F.2d 297 (5th Cir.1977); *Alexander v. United States*, 390 F.2d 101 (5th Cir.1968). In this case, the state candidly admits that the officers intended the scope of their search to include drugs. However, respondent was led to believe the search was necessary only to locate Spider's rifle and respondent's pistol in connection with the assault charge against Spider. Certainly respondent was not informed that he was a criminal suspect.

By not informing respondent he was under investigation before obtaining his consent, the state engaged in the type of government conduct criticized in *Tweel* at 299–300. Consequently, the trial court was justified in finding that respondent consented to a search for the weapons and did not consent to a complete search of his apartment.

### Scope of authorized search

■ The scope of a search is limited by the terms of its authorization. *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980). A search that exceeds the authorized consent is unreasonable and violates the fourth amendment. *United States v. Dichiarinte*, 445 F.2d 126, 129–30 (7th Cir.1971). A limited voluntary consent does not authorize "indiscriminate rummagings" into a person's possessions. *State v. Powell*, 357 N.W.2d 146, 150 (Minn.Ct.App.1984).

■ In this case, the trial court did not err in finding that respondent's consent was limited solely to a search for the weapons. When the two weapons were found, the officer had a duty to discontinue the search and leave the premises. Instead, he remained on the premises, searched inside respondent's diving bag and opened a zipped compartment in which he found the drugs. This continuing search was unreasonable and illegal under the standard enunciated in *Dichiarinte*.

The state argues that respondent made no attempt to retract or narrow his consent once the search began. Therefore, argues the state, it was permissible to continue the search after finding the items for which consent was given. The state cites *United States v. Sierra-Hernandez*, 581 F.2d 760 (9th Cir.1978), *cert. denied*, 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978) and *Powell* in support of this argument. However, both *Sierra-Hernandez* and *Powell* involved searches which continued in the presence of the consenting person. In both cases, the consenting person did not retract or narrow the consent when the search proceeded to areas beyond the initial consent. Here, respondent was being transported to the police station in a squad car and had no idea the search was going beyond the scope of his consent. *Sierra-Hernandez* and *Powell* are distinguishable from this case.

### 2. *Suppression of Inculpatory Statements*

Evidence which is gained as the direct or indirect result of an illegal police action must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963) (citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920)). However, the statement will not be suppressed if there is an intervening act of free will between the time of the illegal act and the inculpatory statement. *Wong Sun* 371 U.S. at 488, 83 S.Ct. at 417. The burden is on the state to prove that the appellant's admission is sufficiently an act of free will to purge the primary taint of the unlawful invasion. *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975).

The Miranda warning itself will not be sufficient to purge the taint of an illegal search. Although the Miranda warning may protect fifth and sixth amendment rights, it does not guarantee compliance with the fourth amendment prohibition of unreasonable searches and seizures. *Brown* at 602–03, 95 S.Ct. at 2261 (1975).[2] For purposes of fourth amendment protections, the focus is on the causal chain between the illegal search and the resulting confession. *Id.* at 602, 95 S.Ct. at 2261.

The factors to be considered in determining whether the causal chain is broken are (1) the time between the illegal search and the confession, (2) the presence of intervening circumstances and (3) the purpose and flagrancy of police misconduct. *Dunaway v. New York*, 442 U.S. 200, 218, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979); *State v. Weekes*, 312 Minn. 1, 2–3, 250 N.W.2d 590, 594 (1977); *State v. Albino*, 384 N.W.2d 525, 528 (Minn.Ct.App. 1986). We agree with the trial court's finding that there was no break in the causal chain from the illegal search to the confessions. It was less than one hour between the two occurrences. In addition, there were no significant factors which intervened between respondent's ride to the station, his giving a victim's statement and his being confronted with the evidence against him.[3] Finally, the police conduct, although perhaps not flagrant, surely appears to have been purposefully deceptive.

The trial court's finding that the confession was the fruit of the illegal search is also supported by decisions involving similar fact patterns in *United States v. Basurto*, 497 F.2d 781 (9th Cir.1974) and *State v. Mathison*, 263 N.W.2d 61 (Minn.1978). Accordingly, we conclude that the trial court correctly suppressed evidence of respondent's inculpatory statements made after he was confronted with illegally seized evidence.

### DECISION

In considering the totality of the circumstances, the trial court was justified in finding that respondent's consent to a full search of his apartment was invalid because it was procured through misrepresentation. The trial court properly suppressed physical evidence seized in the illegal search, and was also justified in finding that respondent's inculpatory statements were fruits of the illegal search and therefore suppressible.

Affirmed.

---

2. We also question the justification for giving respondent a Miranda warning while he was making a victim's statement.

3. The state argues that respondent volunteered the statement that the cocaine was "cut." This statement was made minutes after he was arrested and cannot be considered a sufficient act of free will to fall outside the causal chain.