In the Matter of the **WELFARE OF J.W.K., Child.**

No. CX–97–1696.

Court of Appeals of Minnesota.

Feb. 17, 1998.

Review Granted April 14, 1998.

---

Hubert H. Humphrey III, Attorney General, Boyd Beccue, Kandiyohi County Attorney, Jeffery S. Thompson, Assistant County Attorney, for appellant State of Minnesota.

Ramona Lackore, Assistant Public Defender, Willmar, Mark D. Nyvold, St. Paul, for respondent J.W.K.

Considered and decided by HARTEN, P.J., and HUSPENI and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

The district court ordered suppression of J.W.K.'s blood comparison test and confession, ruling that the blood test exceeded the scope of J.W.K.'s consent and the confession was the fruit of the unconstitutional search. We affirm.

## FACTS

On May 27, 1996, a home in New London was burglarized and vandalized. Police collected blood they found splattered in the home. The investigating detective suspected J.W.K., then 15 years old, of the crime.

On October 12, 1996, someone vandalized a New London golf course and stole golf carts. Evidence led investigating officers to include J.W.K. as one of four suspects. Police requested blood samples from all four suspects to compare to evidence found at the vandalized crime scene. On October 17, both J.W.K. and his mother consented to have J.W.K. give a blood sample and signed a form: "Consent/Permission to Search." The form authorized the sheriff's department to "[t]ak[e] blood from [J.W.K.] to compare against evidence from where one of the golf carts was stored for a short time." Both J.W.K. and his mother testified that they consented to a blood test to clear J.W.K. of any involvement in the golf course crimes. They were not asked and did not consent to a comparison of the blood sample to evidence found at the burglary.

J.W.K.'s blood was drawn but was never tested or compared to evidence found at the golf course because a different suspect confessed to that crime. Investigating officers in the golf course crime informed the burglary investigator that they had a sample of J.W.K.'s blood that they no longer needed, and they turned the blood sample over to him. A test comparing J.K.W.'s blood sample against the evidence found at the burglary linked J.K.W. to the burglary. On April 14, J.W.K. and his mother were informed of the test results, J.W.K. was interviewed, and J.W.K. confessed to the burglary.

At a pretrial hearing, J.W.K. moved to suppress evidence of the blood tests and his ensuing confession. The district court ordered the evidence suppressed.

## ISSUE

Did the district court err by suppressing the blood test and confession?

## ANALYSIS

"The Fourth Amendment to the United States Constitution and Article I of the Minnesota Constitution proscribe unreasonable searches." *State v. Paul*, 548 N.W.2d 260, 264 (Minn.1996). Absent exigent circumstances, a warrantless search is per se unreasonable. *Id.* While a search warrant is normally required for the taking of blood, a defendant can waive this Fourth Amendment right by consenting to the search. *State v. Gilbert*, 262 N.W.2d 334, 340 (Minn.1977).

The state argues that once J.W.K. submitted a blood sample, he no longer had a privacy interest in the identifying information contained in his blood. The state relies on cases upholding the constitutionality of blood tests to create DNA data banks. However, the lessened privacy interest recognized by *Rise v. Oregon*, 59 F.3d 1556 (9th Cir.1995) and similar cases was limited to the privacy interest of convicted felons:

> Once a person is convicted of one of the felonies included as predicate offenses * * * his identity has become a matter of state interest and he has lost any legitimate expectation of privacy in the identifying information derived from the blood sampling.

*Id.* at 1560. *Accord Boling v. Romer*, 101 F.3d 1336, 1340 (10th Cir.1996); *Jones v. Murray*, 962 F.2d 302, 306–07 (4th Cir.1992). These cases do not diminish J.W.K.'s legitimate expectation of privacy in the information contained in his blood. *See Gilbert*, 262 N.W.2d at 340 (Fourth Amendment requires warrant or consent to obtain suspect's blood sample); *accord Barlow v. Ground*, 943 F.2d 1132, 1138 (9th Cir.1991) (warrantless testing of blood for HIV antibodies that are not evanescent violated Fourth Amendment); *State v. Welch*, 316 N.C. 578, 342 S.E.2d 789, 794 (1986) (blood type not evanescent and test without warrant violated Fourth Amendment); *State v. Comeaux*, 786 S.W.2d 480, 485 (Tex.Ct.App.–Austin 1990) (state violated defendant's fourth amendment rights when it searched defendant's blood obtained pursuant to valid consent but tested for purpose unrelated to consent), *review denied* (Tex. Nov. 6, 1991).

We conclude that the scope of J.W.K.'s consent is limited by the terms of its authorization. *See State v. Schweich*, 414 N.W.2d 227, 230 (Minn.App.1987); *see also Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980). Here, suppression was proper because the use of J.W.K.'s blood sample to compare to evidence from the burglary exceeded the scope of consent. The plain language of the consent form prepared by law enforcement undermines the state's contrary argument. *Cf. Current Tech. Concepts, Inc. v. Irie En-ters., Inc.*, 530 N.W.2d 539, 543 (Minn.1995) (any ambiguity in contract construed against drafter). Police ignored their own explicit assurance to J.W.K. that his blood would be used only for evidence related to the golf course crime, and instead used it for evidence of an unrelated crime. Obtaining consent to search for evidence of one crime and using that consent to search for evidence of another crime exceeds the scope of the consent. *Schweich*, 414 N.W.2d at 230.

When police decided to compare J.W.K.'s blood with evidence found at the residential crime, they conducted an additional search without J.W.K.'s consent and without a warrant. This additional search violated J.W.K.'s Fourth Amendment rights. *See id.* (search that exceeds authorized consent is unreasonable and violations Fourth Amendment); *cf. Walter*, 447 U.S. at 654, 100 S.Ct. at 2400 (although law enforcement lawfully possessed rolls of 8mm film, viewing film for purpose of obtaining crime evidence was additional search requiring warrant or consent); *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) (analysis of contents of fingernails was search requiring constitutional protection distinguishing fingerprints and voice samples constantly exposed to public). The constitutional violation required suppression of J.W.K.'s blood tests and his resulting confession. *See Schweich*, 414 N.W.2d at 230–31 (suppressing evidence obtained from illegal search and evidence that was fruit of illegal search).

## DECISION

The district court properly suppressed evidence obtained by comparing J.W.K.'s blood to evidence at the residential crime scene because that search exceeded the scope of J.W.K.'s consent.

**Affirmed.**