The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Roy Lee LONGORIA,
Defendant-Appellee.

No. 85SA210.

Supreme Court of Colorado,
En Banc.

April 21, 1986.

G.F. Sandstrom, Jr., Dist. Atty., Scott B. Epstein, Chief Deputy Dist. Atty., Pueblo, for plaintiff-appellant.

Douglas D. Piersel, Pueblo, for defendant-appellee.

ROVIRA, Justice.

The defendant, Roy Lee Longoria, has been charged with aggravated robbery and two counts of habitual criminal. In this interlocutory appeal, filed pursuant to C.A.R. 4.1, the People challenge the Pueblo County District Court's order suppressing defendant's statements obtained when he was in custody. At the suppression hearing, the defendant claimed that he was entitled to be readvised of his *Miranda* rights after police questioning about an alleged sexual assault but before questioning about an armed robbery. The People contend that the defendant had been properly advised of his *Miranda* rights prior to police questioning; therefore, it was not necessary for the police to readvise him of his rights prior to questioning about the armed robbery. We reverse.

I.

The facts surrounding the trial court's order to suppress are not in dispute. At the suppression hearing, the following information was elicited from Officers Bradford and Goddard of the Pueblo Police Department.

On the evening of January 24, 1985, Bradford was informed of an armed robbery which had occurred earlier that evening at a Kwik-Way store in Pueblo. On January 26, 1985, Goddard, of the Pueblo Police Department's "Crime-Stoppers" unit, received an anonymous phone call informing him that the defendant had committed the Kwik-Way robbery. On that same day, Goddard gave Bradford the information obtained from the Crime-Stoppers phone call.

Prior to learning about defendant's alleged involvement in the armed robbery, Bradford had learned that the defendant was a suspect in an alleged sexual assault which also occurred on or about January 24, 1985. The victim of the alleged sexual assault was the former sister-in-law of the defendant.

On January 28, 1985, Bradford and Goddard drove to the defendant's house. When the officers arrived, they found the defendant in his yard working on an automobile. They approached the defendant, identified themselves, and told the defendant that they wanted to talk to him about a sexual assault. The defendant agreed to talk about the alleged assault, at which time the officers asked the defendant to accompany them to the police station. The defendant agreed, and then asked the officers if he was under arrest. Bradford told the defendant that he was not under arrest. The defendant then asked if he would be coming back to his house. In response, Bradford said it would depend on the information the defendant provided at the police station. The defendant was not handcuffed, nor was he informed of his *Miranda* rights at that time.

At the police station, the defendant signed an advisement form waiving his *Miranda* rights. The form did not expressly state the crime for which defendant was a suspect.

The officers then questioned the defendant about the alleged sexual assault at his former sister-in-law's house. According to the testimony of Bradford, the defendant told the officers that at first the woman "was a willing participant and then she started crying and he never proceeded, he left."

Without readvising the defendant of his *Miranda* rights, Bradford then told the defendant that he, Bradford, wanted to talk to him about the robbery. The defendant then said: "Why do you want to talk to me about that," or words to that effect. Bradford then proceeded to tell the defendant about the information the police had learned through the Crime-Stoppers phone call which linked the defendant to the robbery. The information included a detailed description of the robber, that the robber used a knife, and that the caller had overheard the defendant talking about the robbery. After Bradford related the details of the robbery to the defendant and his

knowledge of the defendant's involvement, the defendant, without further questioning by Bradford or Goddard, admitted that he committed the Kwik-Way robbery.

The defendant was arrested and charged with aggravated robbery pursuant to section 18–4–301(1), 8 C.R.S. (1978). Prior to the suppression hearing, the trial court granted the district attorney's motion to amend the information to include two counts under the habitual criminal statute, section 16–13–101, 8 C.R.S. (1985 Supp.), for defendant's prior convictions in Wyoming involving burglary, theft of an automobile, and two counts of Delivery of No Account Checks.

After the hearing, the trial court, based solely on its conclusion that the officers "had a duty to inform the Defendant that he was a suspect in the armed robbery and to readvise him of his Miranda rights before questioning him about that crime," granted the motion to suppress the defendant's statements admitting that he committed the robbery.

## II.

The question before us is whether the defendant's admission that he committed the Kwik-Way robbery was preceded by a valid waiver of his *Miranda* rights. We recently considered this issue in *People v. Spring,* 713 P.2d 865 (Colo.1985), *cert. granted,* — U.S. —, 106 S.Ct. 1961, — L.Ed.2d — (U.S. May 5, 1986) (No. 85–1517), and *Jones v. People,* 711 P.2d 1270 (Colo.1986). *Spring* adopted a "totality of the circumstances" test for determining the validity of a suspect's waiver where the police inform a suspect that he will be questioned about one crime, obtain a waiver, and then change the subject matter of the inquiry to another crime. After considering the totality of the circumstances, the court concluded that the defendant, Spring, had a right to be readvised of his rights prior to questioning concerning an unrelated crime. *Jones,* decided shortly after *Spring,* applied the standards announced in *Spring* but concluded that the defendant was not entitled to readvisement. Therefore, in order to resolve this case, we need to determine whether, under the totality of the circumstances, the defendant was entitled to be readvised of his rights.

■ Statements made by a defendant during a custodial interrogation are admissible only if the prosecution establishes that the defendant was adequately warned of his privilege against self-incrimination and his right to counsel and thereafter voluntarily, knowingly, and intelligently waived those rights. *Miranda v. Arizona,* 384 U.S. 436, 444–45, 467–76, 479, 86 S.Ct. 1602, 1612–13, 1624–29, 1630, 16 L.Ed.2d 694 (1966); *Spring,* 713 P.2d at 869; *Jones,* 711 P.2d at 1275. Therefore, a threshold question is whether the questioning at the Pueblo police station constituted custodial interrogation. Here, even though the trial court did not make findings on the custody issue, we believe that the questioning of the defendant constituted custodial interrogation. *See Jones,* 711 P.2d at 1275–76.

■ We must next evaluate the effectiveness of defendant's waiver of *Miranda* rights and the voluntariness of his inculpatory statements. *Spring,* 713 P.2d at 870; *People v. Pierson,* 670 P.2d 770, 776 (Colo. 1983). The People must prove the validity of a waiver by clear and convincing evidence and the voluntariness of subsequent statements by a preponderance of the evidence. *People v. Fish,* 660 P.2d 505, 508 (Colo.1983). Since the voluntariness of the defendant's inculpatory statements is not in issue, we limit our inquiry to the validity of the waiver.

"A waiver is valid if it is a knowing and intelligent relinquishment of a known right under the totality of the circumstances which in turn is determined by 'the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.'" *Pierson,* 670 P.2d at 775 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). The courts will indulge every reasonable presumption against a waiver. *Pierson,* 670 P.2d at 775. We are also mindful that the trial

court's findings of fact concerning the validity of a waiver will be upheld on appeal if supported by adequate evidence in the record. *Spring*, 713 P.2d at 870; *People v. Cummings*, 706 P.2d 766, 769 (Colo.1985).

In order to decide whether the defendant made a voluntary, knowing, and intelligent waiver of his *Miranda* rights, we derive guidance from *Spring* and *Jones*. In *Spring*, the defendant was arrested in Kansas City, Missouri, by agents of the federal Bureau of Alcohol, Tobacco and Firearms (ATF); charged with interstate transportation of stolen firearms; and given his *Miranda* rights which he waived. While questioning the defendant about the firearms transaction, the agents, without any warning, began to question the defendant about a Colorado homicide. The defendant then made incriminating statements concerning the homicide.

In concluding that the incriminating statements should have been suppressed, the court set forth the standard for resolving the admissibility of such statements. In so doing, we affirmed the principle that a court must consider the totality of the circumstances when deciding whether a waiver was voluntary, knowing, and intelligent. *Spring*, 713 P.2d at 870. The court noted that no one factor is determinative in the analysis and stated:

> Whether and to what extent a suspect has been informed or is aware of the subject matter of the interrogation prior to its commencement is simply one factor in the court's evaluation of the total circumstances, although it may be a major or even determinative factor in some situations.

*Spring*, 713 P.2d at 873 (citations omitted). We also stated that in determining the validity of a waiver it is "crucial" for a court to consider the extent of the suspect's knowledge concerning the likely subjects and scope of the prospective questioning. The court further stated:

> Thus, it is important to determine whether the questions were related to crimes or general subject matter about which the suspect anticipated interrogation, or

whether the police led the suspect to believe that he would be questioned about one crime but then interrogated him about a totally unrelated offense. *Spring*, 713 P.2d at 873.

Most important, however, the *Spring* court refused to adopt an absolute rule that waiver of *Miranda* rights can never be intelligent, knowing, and voluntary where the suspect has not been told of the crime he is suspected of having committed. Rather, we decided that a court should consider "the extent of the suspect's understanding of the subject matter, and the source of that understanding, simply as factors in the totality of the circumstances surrounding the making of a statement." *Spring*, 713 P.2d at 873–74. Applying this analysis to the facts, the court reasoned that since the defendant had no reason to suspect that the ATF agents who arrested him in Kansas City for a federal firearms violation would question him about a homicide occurring in Colorado, and the federal crime occasioning the interrogation constituted a "relatively less serious matter than first-degree murder," 713 P.2d at 874, the waiver was invalid because Spring could not have expected that the interrogation would extend to the homicide.

In *Jones*, we applied the test set forth in *Spring* and concluded that the defendant had validly waived his *Miranda* rights. In distinguishing the facts of *Jones* from those of *Spring*, the court stated:

> The federal agents in *Spring* began questioning the defendant about firearms charges and then asked about an unrelated homicide. In this case, the Manchester police questioned the defendant about his claim that his car was stolen and that he was Angel Santiago. Questioning about the car necessarily involved the subject of the Santiago homicide, which was part of the same criminal episode involving possession of a stolen automobile owned by Angel Santiago. While the defendant in *Spring* had no reason to believe that the federal agents who questioned him about federal charges would also inquire about a Colo-

rado homicide, the defendant here could have reasonably expected to be asked about the circumstances surrounding his ownership and possession of the car he had reported stolen. In our view, the defendant was adequately advised of the subject matter of the interview at the time he waived his *Miranda* rights.

*Jones*, 711 P.2d at 1277.

■ Here, based on the totality of the circumstances as presented in the record, we are convinced that the defendant was sufficiently informed and fully aware that the subject matter of the interrogation was about to change from the sexual assault to the armed robbery. *Spring* made clear that, when analyzing the circumstances surrounding an interrogation in order to determine whether a waiver is valid, "[n]o one factor is always determinative...." 713 P.2d at 873. Rather, *Spring* instructs that "awareness can come from many sources, not only from a direct and explicit statement by the interrogating officers ...." 713 P.2d at 874.

In this case, the incriminating statements were not elicited as a direct result of police questioning. The police officers did not abruptly confront the defendant with a question designed to elicit incriminating statements concerning the armed robbery. Rather, Bradford questioned the defendant only about the alleged sexual assault and then told the defendant that he, Bradford, wanted to talk about the armed robbery. After Bradford stated that he wanted to talk about the armed robbery, the defendant asked: "Why do you want to talk to me about the armed robbery?" At this point, Bradford told the defendant in detail about the information the police had received about the robbery. Only after the defendant had this information did he make incriminating statements. The statements of Bradford sharply contrast with the direct questioning found in *Spring* where the interrogating officers propounded, without any warning, explicit questions regarding the defendant's criminal past and, in particular, the Colorado homicide. *See Spring*, 713 P.2d at 871.

Hence, it is clear that the defendant was adequately forewarned that the subject matter of the interrogation was about to change from the sexual assault to the armed robbery. Given this forewarning, the defendant had an adequate opportunity to consider his situation before making any statement about the robbery. In addition, we note that there is nothing in the record indicating improper police conduct during the investigation. The record is devoid of any indication that the defendant was "threatened, tricked or cajoled" into making the confession. *See Miranda*, 384 U.S. at 476, 86 S.Ct. at 1629.

We conclude, therefore, that the defendant was sufficiently aware of the subject matter of the interrogation thereby enabling him to make a voluntary, knowing, and intelligent waiver of his rights with respect to that interrogation. Accordingly, we reverse the suppression order of the district court and remand for further proceedings.

ERICKSON, J., specially concurs.

LOHR, J., concurs in part and dissents in part. QUINN, C.J., joins in the concurrence and dissent.

ERICKSON, Justice, specially concurring:

I concur in the result reached by the court and would reverse the trial court's order to suppress. I write separately to emphasize my view that the totality of the circumstances establishes that the defendant's statement relating to the Kwik-Way robbery was voluntary.

The defendant agreed to be questioned at the police station about the sexual assault charge that was made against him by his former sister-in-law. After the defendant arrived at the police station and answered questions about the sexual assault, the police officers described to him in detail the facts and reports that they had been given regarding the Kwik-Way robbery. Without any explicit questioning about the robbery, the defendant admitted committing the crime. The defendant had been ad-

vised of his *Miranda* rights, and the entire interview was concluded in a very short period of time. Even though the two crimes were unrelated, the same officers were responsible for investigating both offenses. The defendant's admission of responsibility for the robbery cannot be attributed to any police misconduct or coercion of the defendant.

In my view, both *People v. Spring*, 713 P.2d 865 (Colo.1985), and *Jones v. People*, 711 P.2d 1270 (Colo.1986), are fact-specific cases that reiterate that the admissibility of a statement made by a defendant after a *Miranda* warning has been given depends on a review of the totality of the circumstances. The two unrelated crimes in *Spring* were offenses under both federal and Colorado statutes and were subject to investigation by both federal and state law enforcement officers. Investigation of a federal firearms violation by federal agents resulted in the defendant's confession to the state crime of murder. The facts set forth in part I of the court's opinion clearly indicate that the statement made by the defendant in which he admitted responsibility for the Kwik-Way robbery was voluntary and should not have been suppressed.

Accordingly, I would reverse the trial court order to suppress.

LOHR, Justice, concurring in part and dissenting in part:

I agree with the majority that the district court's order of suppression must be reversed because that court applied an incorrect legal standard in determining that the defendant's waiver of *Miranda*[1] rights was invalid. I conclude, however, that the issue of the validity of that waiver cannot be resolved fairly on the basis of the existing record. Therefore, I would remand this case to the district court with directions to hold a supplemental hearing and to determine the sufficiency of the waiver by applying the standard adopted by us in *People v. Spring*, 713 P.2d 865 (Colo.1985) (*Spring*), and followed in *Jones v. People*, 711 P.2d 1270 (Colo.1986).

In *People v. Spring*, 671 P.2d 965 (Colo. App.1983), and *People v. Jones*, 677 P.2d 383 (Colo.App.1983), the Colorado Court of Appeals held that for a waiver of *Miranda* rights to be effective, the suspect must be informed at the time of the waiver concerning the nature of the crime about which he is to be questioned. We granted certiorari to review each of those cases. In *Spring*, we rejected this *per se* rule and held that the validity of a waiver of *Miranda* rights prior to giving a statement is dependent on an evaluation of the totality of the circumstances surrounding the statement to determine whether the waiver was voluntary, knowing and intelligent. *Spring*, 713 P.2d at 872–73.

> Whether, and to what extent, a suspect has been informed or is aware of the subject matter of the interrogation prior to its commencement is simply one factor in the court's evaluation of the total circumstances, although it may be a major or even a determinative factor in some situations.

*Id.* at 873. We adhered to and applied the totality of the circumstances test in *Jones v. People*, 711 P.2d 1270 (Colo.1986), again rejecting the *per se* approach adopted by the court of appeals.

The hearing that resulted in the order of suppression now before us was held after the court of appeals decided *Spring* and *Jones*, but before our decisions on certiorari in those cases. The record in the present case shows that the defendant's attorney presented evidence under the justified belief that the *per se* rule developed by the court of appeals in *Spring* and *Jones* was controlling. Defense counsel obviously concentrated on establishing only the facts necessary to show the applicability and violation of the *per se* rule and not on developing the totality of the circumstances surrounding the waiver and the making of the statements. In particular, little attention was paid to showing whether the defendant had reason to believe that the subject of the questioning might extend to armed rob-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

bery before he agreed to talk with the officers. Nor was there any effort to develop the full factual context in which the waiver was given so that the court could determine how significant the failure to advise the defendant of the prospective questioning about the armed robbery might have been in the defendant's decision to waive his *Miranda* rights. *See People v. Spring*, 713 P.2d at 872–75. The district court's findings were limited to those relevant to the applicability of the now-discredited *per se* rule.

The presentation of evidence directed to a standard later established to be incorrect has resulted in a record woefully inadequate for a determination of the sufficiency of the defendant's waiver of *Miranda* rights upon the basis of the totality of the circumstances.[2] To resolve the factual issues necessary to determine whether the waiver was valid is not an appropriate function for an appellate court. Moreover, to resolve those issues in either an appellate court or in the district court on the present record is not calculated to yield a fair result. We have not hesitated to remand in analogous situations in the past.

*See People v. Viduya*, 703 P.2d 1281, 1287 (Colo.1985) (a remand for a new hearing was required when the district court denied a motion to suppress statements after applying the wrong legal standard for determining whether a suspect was in custody for the purposes of *Miranda*); *People v. Black*, 698 P.2d 766, 768–69 (Colo.1984) (same).

I would reverse the order of the district court and remand the case to that court for a supplemental hearing and redetermination of the merits of the defendant's motion to suppress.[3]

I am authorized to say that QUINN, C.J., joins in this concurrence and dissent.

---

2. *E.g.*, the record concerning the sexual assault incident discloses only that the allegation arose out of a possibly ambiguous episode involving Longoria's former sister-in-law, that there was some question about the alleged victim's willingness to prosecute, and that Longoria was not charged with this crime. It is entirely possible that under such circumstances, a defendant might be willing to waive his *Miranda* rights and discuss the allegation of sexual assault but would not be willing to do so for a straightforward and obviously serious charge concerning the armed robbery of a commercial enterprise. Without further evidence and findings, we simply have no basis to evaluate the significance of these matters as they relate to the validity of the waiver.

3. In resolving the issue of the waiver of the defendant's *Miranda* rights, the majority attaches importance to the fact that after the police had questioned the defendant about the sexual assault, they "did not abruptly confront the defendant with a question designed to elicit incriminating statements concerning the armed robbery." Majority op. at 501. Instead, the interrogating officer said he wanted to talk about the armed robbery and, after the defendant asked him why, related the information the police had received about the robbery. Only then did the defendant make incriminating statements. *Id.* In *Spring*, however, we expressly noted that post-waiver information concerning new subject matter of questioning is not likely as effective as information imparted prior to the time questioning begins in establishing a foundation for a voluntary, knowing and intelligent waiver. *Spring*, 713 P.2d at 874–75. The majority also attaches importance to the fact that "the incriminating statements were not elicited as a direct result of police questioning," but rather came after the officer related in detail the information known to the police concerning the robbery. Majority op. at 501. Although it is not entirely clear how the indirectness of the questioning relates to the effectiveness of the waiver of *Miranda* rights, it is certain that interrogation under *Miranda* refers not only to express questioning but also to words or actions on the part of the police "that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980); *accord People v. Lowe*, 616 P.2d 118, 122 (Colo.1980). The assessment of the effect of the entirety of these factual circumstances on the validity of the defendant's waiver of his *Miranda* rights should be left to the district court.