The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Randy ROSS, Defendant–Appellee.

No. 91SA269.

Supreme Court of Colorado, En Banc.

Jan. 13, 1992.

Donald E. Mielke, Dist. Atty., First Judicial Dist., Donna Skinner Reed, Chief Appellate Deputy Dist. Atty., Golden, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Randy Canney and Eric R. Toray, Deputy State Public Defenders, Golden, for defendant-appellee.

Justice MULLARKEY delivered the Opinion of the Court.

The district attorney brings this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), 8A C.R.S. (1991 Supp.), to challenge the Jefferson County District Court's ruling which suppressed statements made by the defendant, Randy Ross, to a police investigator at the county jail beginning five days after his arrest. The district court ruled that although Ross initiated the first conversation with the investigator and the statements were not made in response to custodial interrogation, nevertheless the statements must be suppressed because there was no evidence that the defendant knowingly and intelligently waived his right to counsel. We reverse and remand for further proceedings consistent with this opinion.

## I.

On November 19, 1990, the defendant, Ross, was arrested for Distribution of a Controlled Substance, Schedule II in violation of section 18–18–105, 8B C.R.S. (1990 Supp.). He was arrested at his home pursuant to a warrant and taken to the Arvada Police Department. He was advised of his *Miranda*[1] rights, and at that time he indicated that he wished to speak to an attorney. The police officers ceased further communication with Ross, except that required to complete the normal booking process. Corporal Hartley, of the special investigations unit, then gave the defendant his business card and told him to call if he wanted to talk.

An attorney was appointed to represent the defendant at his first court appearance on November 20, 1990. Several days thereafter, the defendant contacted the special investigations unit where Corporal Hartley worked and left a message that he wished to speak with Corporal Hartley at the Jefferson County Jail where he was being held. On November 24th, Corporal Hartley contacted Ross at the jail where they met in a contact visiting room for a period of 15–20 minutes.

No one else was present at the meeting, and Corporal Hartley did not re-advise the defendant of his *Miranda* rights prior to speaking to him. The meeting began with Hartley greeting the defendant by saying "hello," after which the two engaged in "small talk." Then, Ross proceeded to tell Hartley that he had figured out who had "set him up" in the drug transaction for which he had been arrested. Ross further told Hartley that the charge against him was not a valid charge because the substance which he had sold to the informant was only an imitation of cocaine. Corporal Hartley testified that he did not ask the defendant any questions at the meeting. In addition, Ross indicated to Hartley that he wanted to be released from jail, and that he was interested in becoming an informant for the police department. Corporal Hartley arranged to contact the defendant again on November 28th in order to confirm that Ross had full knowledge and understanding of what was involved in being a police informant. The purpose of the November 28th meeting was also to obtain the information which Ross intended to provide with respect to others engaged in drug transactions.

At the November 28th meeting, Corporal Hartley did not advise Ross of his *Miranda* rights. The meeting lasted for 35–40 minutes, and Ross provided information on specific people involved in drug transactions. Hartley asked the defendant follow-up questions pertaining to this information, but Hartley did not ask any questions which concerned the defendant's arrest or

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the events which led to his arrest. They did not talk about the events relating to the defendant's arrest.

A third meeting occurred between Corporal Hartley and the defendant while Ross was still in the Jefferson County Jail facility. This meeting took place a few days after the meeting on November 28th, but the specific date of the meeting is not known. It lasted only a few minutes, and no one else was present. Corporal Hartley confirmed the information concerning others involved in drug transactions which Ross had provided on the previous occasion. Hartley instructed Ross to contact him upon his release so that he could begin his work as an informant.

The defendant was later released from the jail, but failed to telephone Corporal Hartley as planned. Thus, on December 18th, after having attempted unsuccessfully several times to reach the defendant, Hartley and another investigator went to Ross's apartment. Ross was at home when the officers arrived, and he spoke with the officers for approximately five minutes. Ross was not advised of his *Miranda* rights. Corporal Hartley asked the defendant if he still intended to become a police informant and informed the defendant that it was necessary to begin if he still intended to do so. The defendant told Corporal Hartley that he had changed his mind and no longer wished to become an informant.

On January 17, 1991, Ross appeared in court for his preliminary hearing where the court dismissed the charge of Distribution of a Schedule II Controlled Substance in violation of section 18–18–105 and found that probable cause was shown as to the added charge of Distribution of an Imitation Controlled Substance in violation of section 18–5–604, 8B C.R.S. (1990 Supp.). On May 16, 1991, the trial court held a hearing on the defendant's motion to suppress the statements received by Corporal Hartley at the above-described meetings. At the hearing, the defendant argued that the statements were obtained in violation of his right to counsel and his right to remain silent. Hartley gave the sole testimony at the hearing.

The trial court concluded that the defendant initiated the November 24th meeting and that Corporal Hartley did not ask any questions at that meeting. It also determined that although Hartley initiated the conversations after that date, nothing which pertained to the defendant's alleged crime was said at those meetings. Applying the analysis of *People v. Martinez*, 789 P.2d 420 (Colo.1990), it concluded that although Ross had initiated the first meeting, the evidence was insufficient to show a knowing and intelligent relinquishment of the right to counsel. Thus it ruled that the information obtained from the defendant on November 24th was obtained in violation of the defendant's Fifth Amendment rights, and the trial court also suppressed any statements which Ross made subsequent to the conversation of November 24th. Ross now argues that admitting the statements would violate his rights under the Fifth and Sixth Amendments as applied to the states through the Fourteenth Amendment of the United States Constitution.[2]

## II.

The requirements for admitting statements made by an accused after invoking the right to counsel are set forth in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) and *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). Once a defendant requests counsel during custodial police interrogation, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484, 101 S.Ct. at 1885. If the defendant initiates further communication with the police, and there is no interrogation by the police at that point, then any statements made by the defendant at that time will not

---

**2.** Ross also cites Article II, Sections 16 and 18 of the Colorado Constitution, but his argument is framed only under the federal constitution. Thus, we will analyze the case on that basis.

be found to have been obtained in violation of the defendant's Fifth Amendment rights. On the other hand, if the defendant-initiated conversation involves interrogation, then the prosecution must show that there was a knowing and intelligent waiver by the defendant before any statements made by the defendant may be admitted at trial.

In *Martinez,* we laid out a two-step test, with the second step applying only where there is custodial interrogation, for admitting into evidence a defendant's statement made after asserting his right to counsel:

> To fall within the exception, an accused must first initiate the conversation with the police and by his comments must "evince[ ] a willingness and a desire for a generalized discussion about the investigation," and not merely question the reasons for custody. [*Bradshaw,* 462 U.S.] at 1045–46 [103 S.Ct. at 2834–35]; *People v. Pierson,* 670 P.2d 770, 775 (Colo.1983). Second, under the *Edwards–Bradshaw* test, the prosecution must establish that the statements elicited from the accused during custodial interrogation were *preceded by a valid waiver* of the right to counsel and the right to remain silent. *Id.*

*People v. Martinez,* 789 P.2d at 422. "The *Edwards* rule is designed to be a prophylaxis 'to counteract the inherent pressures of custodial interrogation.'" *People v. Anthony Trujillo,* 773 P.2d 1086, 1091 (Colo. 1989) (quoting *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988)).

▮▮▮ The People contend that the trial court misapplied *Martinez* when it suppressed the statements on the ground that there was no showing of a valid waiver of the right to counsel. Specifically, the People argue that *Martinez* requires a showing of valid waiver only *if* there is police interrogation after the defendant initiates further conversation. The People argue that there was no interrogation here, and therefore it is not necessary to establish that there was a valid waiver. We agree that, as found by the trial court, there was no interrogation, and we conclude that the

trial court should not have considered the question of whether a knowing and intelligent waiver existed because such a determination must be made only if there is a "custodial interrogation."

First we turn to the trial court's finding that there was no interrogation. We have discussed the concept of interrogation as follows:

> The term "interrogation" under *Miranda* refers not only to express questioning by a police officer, but also to any words or actions on the part of the officer that the officer "should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The determination of whether an officer's words or actions are "reasonably likely to elicit an incriminating response" turns primarily "upon the perceptions of the suspect, rather than the intent of the police [officer]." *Id.* at 301, 100 S.Ct. at 1690.

*People v. Julian Trujillo,* 784 P.2d 788, 790–91 (Colo.1990). With this understanding of interrogation, we will review the facts of this case.

The record shows, and the trial court found, that Corporal Hartley contacted Ross at the defendant's initiation. At the first meeting, Corporal Hartley arrived at the county jail and greeted the defendant. Without any words or actions on the part of Corporal Hartley which he should have known would extract such a result, the defendant then made statements concerning the events which led to his arrest. Subsequent meetings were initiated by Corporal Hartley, but he did not ask the defendant any questions concerning the defendant's alleged crime and the record establishes that the subject of the defendant's alleged criminal activity was not discussed. Rather, the conversation at those meetings centered around the defendant's agreement to give the police information on others involved in drug transactions.

On these facts, we find that there was no interrogation under the definition first set out by the Supreme Court in *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64

L.Ed.2d 297 (1980), and discussed by us in *Julian Trujillo,* 784 P.2d 788. At the first meeting, Corporal Hartley did not ask any questions, nor did he engage in any words or actions which were reasonably likely to elicit incriminating statements. At the three meetings which followed, the record shows that no conversation occurred which pertained to the alleged crime. Therefore, the questions asked by Corporal Hartley, which related to the defendant's prospective status as police informant, did not fall within the meaning of interrogation since they were not "reasonably likely to elicit an *incriminating* response."[3] (Emphasis added.)

Once the defendant initiated the meeting, nothing in the Fifth Amendment prohibited the authorities from merely listening to his voluntary, volunteered statements and using them against him at trial. *Edwards,* 451 U.S. at 485, 101 S.Ct. at 1885. The Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation. *Edwards,* 451 U.S. at 485–86, 101 S.Ct. at 1885. Absent such interrogation, there was no infringement of the right to counsel, and there was no occasion to determine whether there was a valid waiver. *Id.* at 486, 101 S.Ct. at 1885; *see also Bradshaw,* 462 U.S. at 1044, 103 S.Ct. at 2834. Consequently, the statements should not have been suppressed under the Fifth Amendment.

### III.

■ The defendant's argument for suppressing the statements on Sixth Amendment grounds is the same as that for suppressing the statements under the Fifth Amendment. He argues that there was no valid waiver of his Sixth Amendment right to counsel.

First, we must determine whether the defendant's Sixth Amendment right to counsel had attached at the time the conversations occurred. The United States Supreme Court has concluded that the right to counsel attaches only when formal judicial proceedings are initiated against an individual by way of indictment, information, arraignment or preliminary hearing. *United States v. Gouveia,* 467 U.S. 180, 187, 104 S.Ct. 2292, 2296, 81 L.Ed.2d 146 (1984); *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).[4] The District Attorney concedes, and we agree, that the defendant's Sixth Amendment right to counsel had attached at the time he gave the statements at issue. The complaint was filed on November 13, 1990. At the defendant's first appearance on November 20th, counsel was appointed, the defendant was given a copy of the information, and a preliminary hearing was demanded and set for January 17, 1991.

Once formal criminal proceedings begin, the government is prohibited from "deliberately eliciting" statements from the defendant without an express waiver of the right to counsel. *Michigan v. Harvey,* 494 U.S. 344, 110 S.Ct. 1176, 1179, 108 L.Ed.2d 293 (1990). Furthermore, in *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the Court concluded that, although *Edwards* rested on the Fifth Amendment, the *Edwards* reasoning (including the exception for defendant-initiated conduct) also applies to Sixth Amendment cases. As we discussed above, the defendant initiated the contact with the police and there was no custodial interrogation. Likewise we find Corporal Hartley did not deliberately elicit statements from Ross and, for that reason, no express waiver of the Sixth Amendment right to counsel was necessary. Thus, we conclude that there was no Sixth Amendment violation and the statements need not be suppressed.

---

**3.** The trial court found that the conversations which occurred subsequent to November 24, 1990 did not contain any information having to do with the facts of the crime for which Ross is charged. However, in granting the defendant's motion for suppression of the November 24th conversation, the court also suppressed those conversations "for the benefit of guidance of counsel." No further explanation was given by the court.

**4.** This court has employed the same test for determining when the right to counsel attaches. *See People v. Aalbu,* 696 P.2d 796, 807 (Colo. 1985).

## IV.

For the reasons stated above, we conclude that the trial court improperly suppressed the defendant's voluntary statements which were not made in response to questioning by Corporal Hartley and were made at a meeting initiated by Ross. The statements were not obtained in violation of the defendant's Fifth or Sixth Amendment rights. Accordingly, we reverse the suppression order and remand for further proceedings consistent with the views expressed in this opinion.