The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Mark A. **ZAMORA**, Defendant–Appellant.

No. 94CA0388.

Colorado Court of Appeals, Div. V.

June 27, 1996.

Rehearing Denied Aug. 1, 1996.

As Modified on Denial of Rehearing Dec. 12, 1996.

Certiorari Denied July 21, 1997.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Catherine P. Adkisson, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Beth L. Krulewitch, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Mark Zamora, appeals the judgment of conviction, entered upon a jury verdict, for second degree kidnapping and sexual assault on a child. We affirm.

On May 4, 1993, the thirteen-year-old victim was walking to school when a man drove by, stopped his car in front of her, grabbed her by the jacket, and pulled her into his car. The man took the victim to his apartment, where he sexually assaulted her. He then dropped the victim off at her school, after warning her not to tell anyone about what had happened.

When the victim got home from school, she reported the assault to her mother who immediately called police. In addition to giving a general description of her attacker, the victim remembered the location of the apartment complex where she had been taken, the apartment's layout, its messy appearance, and the presence of an unfilled waterbed frame in the bedroom.

Police investigation soon ruled out all but defendant's apartment. Defendant was not home, so the police waited, and after he returned with his girlfriend, they knocked on the door.

Defendant answered and the officers noted that he did not match the victim's description very well. Defendant exited the apartment, closing the door behind him, and initially refused the officers' request to go inside and talk. Defendant later testified that he had just taken out some marijuana with his girlfriend which he did not want the officers to see, but at the time he simply told the police his apartment was too messy for company.

The officers ostensibly honored defendant's refusal, but then employed a ruse. They assured defendant that they would ignore the messiness of his apartment, but that they just wanted a "quick look" at the layout of the apartment to aid in their investigation of a domestic dispute at an adjacent apartment.

Once defendant felt that his girlfriend had had enough time to hide the marijuana, he agreed to let the officers in. After entering, the officers noted that the apartment's layout matched the victim's description. They also saw the empty waterbed frame in the bedroom through the open bedroom door. After leaving, the officers prepared a photographic lineup from which the victim positively identified defendant. They then obtained a search warrant and arrested defendant.

At trial, defendant admitted to having sex with the victim but claimed that it was consensual. The jury found him guilty of sexual assault on a child and kidnapping.

I.

Defendant first asserts that his consent to the entry of his apartment was invalid because it was obtained through deception, and,

therefore, that any evidence resulting from the search should have been suppressed. We disagree.

■ Police may enter a home to conduct a warrantless search when the person in possession voluntarily consents to the search. The suspect need not be informed of his right to refuse the search although such knowledge should be considered in evaluating the voluntariness of the consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

■ The prosecution has the burden of proving voluntariness by clear and convincing evidence. *People v. Carlson*, 677 P.2d 310 (Colo.1984). Voluntariness is a question of fact to be decided by the trial court, and will be upheld on appeal unless clearly erroneous. *People v. Drake*, 785 P.2d 1257 (Colo. 1990).

■ In determining consent, trial courts must look at the totality of the circumstances surrounding the voluntariness of the consent. *People v. Thiret*, 685 P.2d 193 (Colo.1984). Factors to consider include: the age, education and intelligence of the person consenting to the search; the duration, location and other circumstances of the search; and the consenting person's state of mind.

■ Consent may be voluntary even when the person is not aware of or is misinformed as to the search's purpose. *People v. Santistevan*, 715 P.2d 792 (Colo.1986), *cert. denied*, 479 U.S. 965, 107 S.Ct. 468, 93 L.Ed.2d 412 (1986).

■ Although deception by the police is not condoned by the courts, the limited use of ruses is supported by the overwhelming weight of authority. Most courts have recognized that ruses are a sometimes necessary element of police work and have held that deception standing alone does not invalidate consent; it is one factor to be considered in assessing the totality of the circumstances. *See People v. Santistevan, supra.* (misrepresentation by police about the purpose of a search may weigh against a finding of consent but does not invalidate consent); *People v. Daugherty*, 161 Ill.App.3d 394, 112 Ill.Dec. 762, 514 N.E.2d 228 (1987) (ruses tolerable if

they do not exceed the bounds of fundamental fairness such as by coercion or misrepresentation of authority; search held fundamentally unfair where officer gained entry to home by claiming he wanted to investigate recent theft and questioned owner until drugs were discovered); *State v. Johnson*, 253 Kan. 356, 856 P.2d 134 (1993) (police could obtain consent to search by claiming they were looking for a third party); *State v. Watson*, 416 So.2d 919 (La.1982) (police may search suitcase for drugs by obtaining owner's consent to search suitcase for identification); *People v. Lee*, 160 Misc.2d 711, 610 N.Y.S.2d 1013 (Orange County Court 1994) (ruse held unfair where suspect volunteered her possession of drugs in response to officer's bluff that she would have to ride to station house in patrol car with a drug-sniffing rottweiler; threat to suspect's safety vitiated consent); *Commonwealth v. Morrison*, 275 Pa.Super. 454, 418 A.2d 1378 (1980) (police may misrepresent both identity and purpose to obtain consent to enter home) *cert. denied sub nom. Morrison v. Pennsylvania*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981); *Dotsey v. State*, 630 S.W.2d 343 (Tex. App.1982) (police may use interrogation techniques, such as falsely claiming that a co-conspirator has incriminated suspect, in order to obtain consent to search); 3 W. La-Fave, *Search and Seizure* § 8.2(m) (1996).

*See also United States v. White*, 706 F.2d 806 (7th Cir.1983) (where defendant consented to search of apartment for drugs, discovery and seizure of marked currency was within scope of search and thus permissible; court focused on whether search exceeded the scope of consent produced through the ruse); *State v. Schweich*, 414 N.W.2d 227 (Minn.App.1987) (where homeowner consented to police request to search for a tenant's guns, police should not have continued searching for homeowner's drugs after finding guns; search exceeded scope of consent and was impermissible). *Cf. Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) (overbearing conduct or misrepresentation of authority will render consent involuntary). *But see State v. McCrorey*, 70 Wash.App. 103, 851 P.2d 1234, 1240 (1993) (court held entry impermissible,

stating that "police acting in their official capacity may not actively misrepresent their purpose to gain entry or exceed the scope of consent given"; ruse entries approved in conjunction with *undercover* police activity).

■ Here, the trial court considered the deception by the police as one important factor in assessing the totality of the circumstances. Nevertheless, based upon all of the factors, it determined that defendant's consent was voluntary. That determination is fully supported by the record.

Although the officers may have partially misrepresented their purpose by not disclosing they were investigating a rape rather than a domestic dispute, nevertheless, they were truthful in stating they wished to see the layout of defendant's apartment. In fact, they wanted to compare it with the victim's description of her perpetrator's apartment. The police did not feign an emergency, conceal their identities, or misrepresent their authority. Nor did they exceed the scope of the consent. Defendant permitted the officers to look at the layout of his apartment and that is all the officers did. Once they were in the apartment, they saw how messy it was, a fact already disclosed voluntarily by the defendant, and they also observed the incriminating waterbed frame in plain view. *See People v. Torand*, 622 P.2d 562 (Colo. 1981) (scope of consensual search may be limited by defendant, but police may consider incriminating items found in plain view while conducting limited search). Further, the court found that defendant was aware of his right to refuse consent, and was not threatened or pressured in any way by the police.

Because the trial court found that the officers were not threatening or overbearing, that defendant's consent was a product of his own free will and intelligently made, and that defendant knew he could refuse entry, there is record support for its conclusion that defendant's consent was voluntary.

Contrary to defendant's contention, *McCall v. People*, 623 P.2d 397 (Colo.1981), does not require a different result.

In *McCall*, probable cause existed for the defendant's arrest. However, the police on the advice of the deputy district attorney deliberately used deception to circumvent the warrant requirement in order to increase their chances of obtaining a confession. Relying heavily on *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which was announced after the trial court's ruling, our supreme court invalidated the arrest of the eighteen-year-old defendant that occurred after his parents had allowed the police to interview him in private. Finding neither exigent circumstances nor valid consent for the warrantless arrest, the court stated:

> The sheriff-detectives deceived the defendant's parents into believing that their purpose in being there was to question the defendant as a witness. It was on the basis of this deception that they were allowed to enter and remain. Once inside the house, they proceeded to carry out their plan of incriminating interrogation, arresting the defendant inside the house, and then spirited him away unbeknown to his mother and father. Where, as here, entry into the home is gained by a preconceived deception as to purpose, consent in the constitutional sense is lacking.

*McCall v. People, supra,* 623 P.2d at 403.

In contrast, here, the police went to defendant's apartment because of the general location given by the victim and did not have probable cause to arrest the defendant. Because he did not fit the description of the perpetrator, this defendant was *not* a suspect at the time police entered his apartment. And, unlike the circumstances in *McCall* in which the police were advised by the deputy district attorney deliberately to circumvent the warrant requirement in order to increase their chances of obtaining a confession and in which all material facts were deceptive, here, the only significant undisclosed fact was the nature of the offense the police were investigating. The police truthfully stated they wanted to see the layout of the apartment, albeit for the investigation of an undisclosed offense.

Finally, in its discussion regarding consent, *McCall* relied on cases decided before *Schneckloth v. Bustamonte, supra.* This older caselaw required a knowing, voluntary, and intelligent waiver of Fourth Amendment

rights before police could obtain consent to search. More recent cases have analyzed the voluntariness of the consent to search a dwelling under the totality of the circumstances test. Under that test, deception is but one factor among many to be considered. *See People v. Sanders,* 904 P.2d 1311 (Colo. 1995); *People v. McKinstrey,* 852 P.2d 467 (Colo.1993). *See also People v. Licea,* 918 P.2d 1109 (Colo.1996) (consent to search of car analyzed under totality of circumstances test; defendant's consent voluntary in the absence of evidence that he did not understand request or that police coercion overcame his will).

Thus, *McCall* is factually distinguishable and the trial court did not err in refusing to suppress evidence on that basis. Accordingly, while we do not condone deception, we conclude that the court did not err in refusing to suppress the fruits of the search of defendant's apartment.

## II.

Defendant next contends that the police failed to honor his right to remain silent by continuing to question him until he confessed to having sex with the victim. The record indicates otherwise.

When the defendant was arrested, he was given a *Miranda* advisement and he told the officer he did not want to talk. The police stopped their questioning and booked him. Later, when an officer asked him if he had changed his mind about talking, defendant said no, all questioning again ceased, and after being booked, defendant was placed in a holding cell.

Some time later, defendant asked officers what was going to happen to him. The police asked if he wanted to talk to a detective and defendant agreed. A detective explained the charges. Defendant continued to talk at which time the detective reminded defendant that he originally had not wanted to talk and that he did not have to talk now. When defendant indicated his willingness to tell his side of the story, the detective readvised him of his *Miranda* rights after which defendant admitted to having sex with the victim.

■ Once a suspect invokes his or her right to remain silent, police must scrupulously honor that right. *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Questioning may continue only when initiated by the suspect, and then only if the suspect evinces a desire to discuss the investigation generally, and not merely question the reason for custody. *People v. Ross,* 821 P.2d 816 (Colo.1992).

■ A suspect who invokes his right to remain silent may later choose to waive the right and speak to police. Under such circumstances, re-advising a defendant of his *Miranda* rights is usually sufficient to insure that a waiver is voluntary, unless police conduct is so egregious as to taint the later confession. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

■ Here, a police officer asked the defendant if he had changed his mind about not talking, but after the defendant said no, the police ended the discussion. Later, the defendant twice asked if anybody was going to talk to him about what was going on. It was only at this point that the police officer summoned a detective, who reminded the defendant of his earlier decision to remain silent, and again advised the defendant of his *Miranda* rights.

We thus agree with the trial court that, under these circumstances, the defendant's decision to talk was voluntary, and that the police did not violate his right to remain silent. *See People v. Delgado,* 832 P.2d 971 (Colo.App.1991).

## III.

Defendant next contends the trial court erred in denying his motion for judgment of acquittal as to the sexual assault by threat of kidnap charge. Specifically, he claims there was insufficient evidence to show a threat of kidnapping with regard to the sexual assault which is required to make the crime a class three felony. We are not persuaded.

■ In challenging the sufficiency of the evidence, we view the record in the light most favorable to the People and consider whether there is sufficient evidence of record

to establish all the elements of the crime beyond a reasonable doubt. *People v. Gonzales,* 666 P.2d 123 (Colo.1983).

■ For purposes of his motion for judgment of acquittal, defense counsel conceded that defendant did kidnap the victim in order to sexually assault her. However, defense counsel argued that, at the time of the sexual assault, the kidnapping was a completed act and defendant could not have committed the sexual assault by threat of imminent kidnapping, as contemplated by § 18–3–405(2)(b), C.R.S. (1995 Cum.Supp.).

We do not read the statute so narrowly. The victim testified at trial that defendant forced her into his car, pulled her jacket up over her head, and took her to his apartment. The victim then did what was demanded of her. Based on these facts, a trier of fact could reasonably determine the victim was kidnapped, and the kidnapping was an ongoing process. The victim's belief that defendant would continue to hold her against her will unless she complied with his sexual demands thus could constitute a continuing threat of imminent kidnap.

Accordingly, we reject defendant's assertion that his conviction on this charge was not supported by sufficient evidence.

## IV.

■ Finally, defendant contends that the trial court committed plain error by not clarifying the jury's confusion over the definition of kidnapping. The record shows that any conceivable error was invited, thus affording defendant no basis for relief.

While deliberating, the jury sent the court a note asking:

> What does kidnapping mean if she was already in the apartment? We are confused about sexual assault with the threat of kidnapping.

The parties agreed that the issue of whether there was a completed kidnapping or a threat of ongoing kidnapping was a question of fact for the jury and that no clarifying instructions should be given. On this basis, the trial court referred the jury back to its original instructions.

Since defendant made a tactical decision to let the jury resolve the issue without further instruction, we reject his argument that the trial court committed plain error in granting his request. *See People v. Zapata,* 779 P.2d 1307 (Colo.1989) (error in instruction that is invited provides no basis for relief).

The judgment is affirmed.

CASEBOLT, J., concurs.

TAUBMAN, J., dissents.

Judge TAUBMAN, dissenting.

I respectfully dissent. Because of the circumstances under which the police employed a ruse to gain entry to search defendant's apartment, I believe the trial court erred in concluding that defendant voluntarily consented to such entry. Accordingly, I would hold that the motion to suppress should have been granted.

Warrantless entries into the home to conduct a search are per se constitutionally unreasonable unless they satisfy an exception to the warrant requirement of the Fourth Amendment. *People v. Taube,* 864 P.2d 123 (Colo.1993). One such exception is entry pursuant to valid consent. However, consent is only valid where, in light of the totality of the circumstances, it has been freely and voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *People v. Thiret,* 685 P.2d 193 (Colo.1984).

Appropriate factors for a court to consider in determining whether consent is voluntary include the age, education, and intelligence of the defendant; the duration and location of the search; the defendant's state of mind; the presence of coercive police procedures; the extent and level of the defendant's cooperation with police; defendant's awareness of the right to refuse to give consent; misrepresentations about the nature or purpose of the investigation; and any other factors that might have affected his or her free and unconstrained choice. *See United States v. Davis,* 749 F.2d 292 (5th Cir.1985), *cert. denied,* 479 U.S. 964, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986); *People v. Carlson,* 677 P.2d 310 (Colo.1984).

While police deception is but one factor to be considered under the totality of the circumstances, that factor may nevertheless be a major or even a determinative factor in some situations. *People v. Longoria,* 717 P.2d 497 (Colo.1986) (in considering voluntariness of confession under totality of circumstances, extent to which a suspect has been informed of the subject matter of police interrogation may be a major or determinative factor); *see* 3 W. LaFave, *Search & Seizure* § 8.2(n) (1987) (while some forms of deception engaged in by a known law enforcement officer in order to obtain a consent may not invalidate the consent, the "fairness" of the type of deception employed in the particular circumstance is particularly relevant).

Such reasoning is underscored by the supreme court's holding in *McCall v. People,* 623 P.2d 397, 403 (Colo.1981) that: "Where, as here, entry into the home is gained by a preconceived deception as to purpose, consent in the constitutional sense is lacking." Although I do not view *McCall* as establishing a per se constitutional violation when law enforcement officers employ a ruse to aid in their investigation, that case nevertheless serves to highlight the subtly coercive and inherently problematic nature of an intentional deception designed to gain entry into a person's home.

To that end, the court in *McCall* relied on *Payton v. New York,* 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639, 650 (1980), in which the Court noted that "physical entry into the home is the chief evil against which the wording of the Fourth Amendment is directed." *See also Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1947) ("The right of officers to thrust themselves into a home is ... a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance."); *People v. Taube, supra.*

The burden is on the People to show by clear and convincing evidence that defendant's consent was voluntarily given. Voluntariness is a question of fact to be decided by the trial court, and its resolution of the issue will be upheld on appeal unless clearly erroneous. *People v. Drake,* 785 P.2d 1257 (Colo. 1990).

Here, in making its findings, the trial court noted that it was "uneasy" about the state of the law regarding police deception, and that it was satisfied by clear and convincing evidence that defendant would not have permitted entry into his apartment had he known of the officers' true purpose. Nevertheless, the court concluded that, under the totality of the circumstances, there was no evidence of duress or coercion. Specifically, the court found that defendant knew he could refuse the officers access to his apartment, that the officers did not engage in any threats or overbearing conduct, and that defendant's decision was made after reflection and was a product of free will, although based upon false information.

In my view, the trial court's finding of voluntary consent by defendant here was clearly erroneous.

It is undisputed that the police had neither probable cause to suspect that defendant was involved in any crime nor a warrant to search his apartment. Indeed, the police testified that defendant did not fit the victim's description of her assailant. After the police officers knocked on defendant's door, he stepped outside and closed the door behind him. Without stating their purpose, the police asked if they could come inside and defendant refused their request to enter.

After defendant indicated that he would not consent to their entry, the officers carried out an intentional, deliberate, and material deception as to their purpose for seeking entry to the apartment. Moreover, the officers did not inform defendant that he was a suspect in any criminal activity. It was only after the officers had assured defendant that their purpose had nothing to do with him that he consented. Thus, as the trial court correctly noted, it was in reliance · on the officers' misrepresentation of purpose that defendant allowed the officers into his apartment.

Under these circumstances, I believe that, as in *McCall v. People,* consent in the constitutional sense was lacking. And, unlike the majority, I do not find *McCall* to be factually

distinguishable in any material sense from the present case. In both cases, the police officers executed a warrantless entry into a home based on the occupant's consent gained after the police misrepresented their purpose.

The fact that probable cause to arrest defendant existed in *McCall,* but not here, does not persuade me otherwise. In my view, the lack of probable cause in this case renders the employment of a ruse more, rather than less, egregious. The officers had no probable cause to believe defendant had committed any crime, no warrant, and defendant did not fit the victim's description of her assailant. Under these circumstances, devising a ruse to enter and search a person's home was a purposeful disregard of defendant's constitutionally guaranteed right to be secure in his home from unreasonable searches and seizures.

Also, unlike the majority, I perceive all of the *material* facts relative to the search of defendant's apartment, like those in *McCall,* to demonstrate the use of deception. Although the police truthfully stated that they wanted to see the layout of the apartment, they also affirmatively misled defendant to believe it was for a purpose that had nothing to do with him. It was not until the police employed the ruse that they were investigating an unrelated domestic dispute nearby that defendant consented to them entering the apartment.

Further, the police stated that they wanted to look *only* at the layout of the apartment. In fact, however, they intended to and did look at more than the layout—they actively looked for certain items, such as an empty waterbed. *See People v. Thiret, supra* (even when consent was given voluntarily, a warrantless search made pursuant thereto must be limited to the scope of the consent). Thus, the deception by the police was not merely "partial" as the majority suggests, but rather, complete and material.

Finally, the fact that *McCall* relied on cases decided prior to *Schneckloth v. Busta- monte, supra,* is irrelevant. *McCall* is still good law and has been cited with approval recently by the supreme court. *See People v. Taube, supra.* Because it is not factually

distinguishable in any material sense from the present case, it cannot be ignored.

In addition, my review of the case law from other jurisdictions indicates that courts are divided on the issue of police deception. As the majority notes, several jurisdictions have held that a ruse is acceptable under certain circumstances. *See State v. Johnson,* 253 Kan. 356, 856 P.2d 134 (1993); *State v. Watson,* 416 So.2d 919 (La.1982); *Commonwealth v. Morrison,* 275 Pa.Super. 454, 418 A.2d 1378 (1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981); *Dotsey v. State,* 630 S.W.2d 343 (Tex.App.1982).

However, several of the cases that are cited by the majority hold that police deception or misconduct rendered the consent involuntary. *See People v. Daugherty,* 161 Ill. App.3d 394, 112 Ill.Dec. 762, 514 N.E.2d 228 (1987) (where law enforcement officer without a warrant falsely claims that he has legitimate police business to conduct in order to gain consent to enter the premises, such deception is so unfair that it renders the consent invalid); *People v. Lee,* 160 Misc.2d 711, 610 N.Y.S.2d 1013 (Orange County Court 1994) (ruse held unfair where police engaged in coercive tactics); *State v. Schweich,* 414 N.W.2d 227 (Minn.App.1987) (misrepresentation of the purpose of a search can rise to such a level of deception to invalidate the consent; by not informing defendant he was under investigation before obtaining his consent, the state engaged in improper deceptive conduct).

Indeed, many other post-*Schneckloth* cases have reached a similar conclusion. *See United States v. Bosse,* 898 F.2d 113 (9th Cir. 1990) (a ruse entry when the suspect is informed that the person seeking entry is a government agent but is misinformed as to the purpose for which the agent seeks entry cannot be justified by consent); *United States v. Briley,* 726 F.2d 1301 (8th Cir.1984) (noting as an important factor as to voluntary consent whether police tell defendant they are not seeking to arrest him or that he is not a suspect); *United States v. Turpin,* 707 F.2d 332 (8th Cir.1983) (misrepresentations about the nature of an investigation may be evidence of coercion and the misrepresentation may even invalidate the consent if it was given in reliance on the officer's deceit);

*United States v. Tweel,* 550 F.2d 297 (5th Cir.1977) (consent to search is unreasonable under the Fourth Amendment if induced by deceit, trickery, or misrepresentation).

*See also Commonwealth v. Slaton,* 530 Pa. 207, 608 A.2d 5 (1992) (affirmative misrepresentation by government agent constitutes consent through deception, which is implied coercion); *State v. Bailey,* 417 A.2d 915 (R.I. 1980) (consent to enter one's home cannot be deemed free or voluntary unless person said to be consenting is aware of purpose for which police seek to enter); *State v. McCrorey,* 70 Wash.App. 103, 851 P.2d 1234 (1993) (police acting in their official capacity may not actively misrepresent their purpose to gain entry or to exceed the scope of the consent given).

Moreover, even in those jurisdictions that have held that a defendant's consent is voluntary despite the police deception, the courts so holding have noted that ruses are not always acceptable and a determination of voluntariness should be made on a case-by-case basis. Voluntary consent is generally found in situations that do not rise to the level of the deception present here, such as when the police fail to disclose an additional purpose for their search, *State v. Watson, supra,* or do not inform the defendant of the seriousness of the crime for which he is a suspect. *United States v. Davis, supra.*

In my view, the conduct of the police officers under the circumstances here offends the Fourth Amendment and is fundamentally unfair when compared with the need for effective police investigation. *See* W. LaFave, *supra,* at § 8.2(n). Where a police officer, without a warrant, uses his official position of authority and falsely claims that he has legitimate police business to conduct in order to gain consent to enter and search a person's home, where the officer affirmatively and intentionally misleads the occupant into believing he or she is not involved in a criminal investigation, and where the defendant grants consent, at least in part, on the basis of those misrepresentations, I would hold that such consent cannot be considered voluntary.

Thus, notwithstanding the fact that defendant knew that he could refuse consent and was not threatened or pressured beyond the officer's initial request, I would conclude that the trial court erred in finding, under the totality of the circumstances, that defendant's consent was freely and voluntarily given. The Fourth Amendment requires no less.