**STATE of Minnesota, Respondent,**

v.

**Dorothy HALLA–POE, Appellant.**

**No. C0–90–1828.**

Court of Appeals of Minnesota.

April 23, 1991.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Peter Cahill, St. Louis Park City Atty., Minneapolis, for respondent.

John G. Westrick, St. Paul, Richard Meshbesher, Hopkins, for appellant.

Considered and decided by DAVIES, P.J., and RANDALL and MULALLY,* JJ.

## OPINION

RANDALL, Judge.

Appellant Dorothy Halla–Poe was charged with three counts of violation of Minn.Stat. § 169.121 (1988) (driving under the influence of alcohol; driving with alcohol concentration of .10 or more; alcohol concentration of .10 or more as measured within two hours of driving). Appellant moved to dismiss the charges against her on the grounds her fourth amendment rights were violated by an unreasonable search and seizure. The trial court denied the motion. Subsequently, appellant pled not guilty, waived her right to a jury trial, and stipulated to the prosecution's case pursuant to the procedure outlined in *State v. Lothenbach*, 296 N.W.2d 854, 857 (Minn. 1980) (procedure often employed in prosecutions where the defendant's only viable defense may be the suppression of the evidence on fourth amendment grounds. *State v. Pendleton*, 427 N.W.2d 272, 273 (Minn.App.1988)). Appellant was found guilty by the trial court and this appeal is taken from the judgment of conviction. We affirm.

## FACTS

The stipulated facts are as follows: On May 28, 1989, at approximately 7:21 p.m., the Edina police department received a telephone call from James Reddin. Reddin told the police he and his wife observed appellant driving erratically on Excelsior Boulevard in St. Louis Park. Based on his eye witness observation, Reddin stated that appellant was speeding and her vehicle swerved sharply hitting the median curb three times before finally stopping in a driving lane of Highway 100.

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment

pursuant to Minn. Const. art. VI, § 2.

Reddin ran to appellant's car, reached in and turned off the engine. Reddin said he smelled alcohol on appellant's breath and noticed she could not walk or talk. Reddin had to physically help appellant out of her car and into his and then, after finding her address on a check, drove her to her apartment. Upon arriving at appellant's residence, Reddin met a neighbor of appellant, and the two of them moved appellant into her apartment. Reddin then called the police. He was concerned about what he felt was appellant's highly intoxicated condition. Reddin thought appellant might not be able to take care of herself, and he wanted the police to take the responsibility.

Two officers were dispatched. When the officers arrived at the apartment building, they were met by Reddin and the other resident. Both gave the officers their personal observations about appellant along the same lines as Reddin had already given the dispatcher. The officers went to the door of appellant's apartment and yelled "Police! Are you okay?" After receiving no response, the officers entered the apartment through an open door and found appellant in her bed.

One of the officers asked appellant if she was okay and she replied she was not. The officers asked appellant if she was injured. She said no but said she had been driving. Appellant was able to make only one or two word responses. Appellant was heavily under the influence of alcohol. The officers believed appellant was unable to care for herself and she said she had no one to call. The officers decided to remove her from the apartment and take her to a detoxification center. Appellant agreed to accompany the officers. The officers had to assist appellant to the squad car. She was unable to walk without their help.

When the officers brought appellant out of the building, Reddin identified her as the person he had observed driving erratically. Before going to the detoxification center, appellant was read the implied consent advisory and agreed to submit to a breath test. Appellant took an Intoxilyzer test at the police station which revealed a blood alcohol concentration of .32%. After charging her with three violations of Minn. Stat. § 169.121, the police transported appellant to the Fairview detoxification facility.

## ISSUE

Was the warrantless entry into appellant's apartment and the subsequent arrest violative of the fourth amendment?

## ANALYSIS

The facts of this case are not in dispute. As such, on review, this court is to simply analyze the facts and determine if, as a matter of law, the officers' actions were justified. *State v. Storvick*, 428 N.W.2d 55, 58 n. 1 (Minn.1988).

Warrantless entries and searches inside one's home are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). In such circumstances the burden is on the state to demonstrate the "police conduct was justified under an established exception to the warrant requirement." *State v. Buschkopf*, 373 N.W.2d 756, 766 (Minn.1985).

Under the "emergency exception" to the warrant requirement police are allowed to make a warrantless entry and search of a home when they reasonably believe that a person within is in need of immediate aid. *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978); *State v. Terrell*, 283 N.W.2d 529, 532 (Minn.1979); *State v. Auman*, 386 N.W.2d 818, 820–21 (Minn.App. 1986), *pet. for rev. denied* (Minn. July 16, 1986); *State v. Anderson*, 388 N.W.2d 784, 787 (Minn.App.1986), *pet. for rev. denied* (Minn. Aug. 20, 1986).

> The need to protect or preserve life or avoid serious injury is justification for what would otherwise be illegal absent an exigency or emergency.

*Mincey*, 437 U.S. at 392–93, 98 S.Ct. at 2413. In evaluating whether the officers' belief a genuine emergency existed was reasonable, an objective standard must be applied. *Anderson*, 388 N.W.2d at 787 (cit-

ing *Root v. Gauper*, 438 F.2d 361, 364 (8th Cir.1971)).

■ When Reddin called the police, he gave them the following information: Reddin and his wife had observed appellant driving erratically, including swerving sharply, hitting the median several times, and stopping her car in a driving lane on a busy thoroughfare. Reddin smelled alcohol on appellant, she was unable to walk or talk, and Reddin had to help her out of her car and into his. Reddin drove appellant to her apartment building and he and a neighbor had to move appellant into her apartment. Reddin and appellant's neighbor were worried about appellant's condition and thought the police should take responsibility.

Based on this information, the police dispatched two officers to the scene. Upon arriving at appellant's building, the officers talked directly with Reddin and the neighbor. The officers were given the same information as had been given by Reddin when he originally called the police. The officers approached appellant's apartment and yelled through the open door, "Police! Are you okay?" Appellant did not respond.

Based on these facts, the officers' belief that appellant was in need of immediate aid was reasonable. The officers had enough information to believe a legitimate medical emergency existed. The facts establish the officers' purpose for entering appellant's apartment was not a subterfuge to investigate and arrest appellant, but to see if she was in need of medical assistance. We affirm the trial court's conclusion that this warrantless entry was justified under the emergency exception.

■ Appellant argues the fact the officers took her to the police station for a blood-alcohol test before taking her to the detoxification center demonstrates that a "welfare check" was used pretextually, and the officers really entered appellant's

apartment for investigatory purposes. While we acknowledge appellant's concern and the importance of the issue involved, a warrantless in-home entry, the trial court did not err, on this record, finding a lawful entry and a valid subsequent arrest.

We emphasize police do not have authority, simply by using the term "welfare check," to vitiate the protections of the fourth amendment.[1] But we accept the trial court's conclusion here that the actions of the police were justified based on their reasonable belief, as established by objective facts, that appellant may have been in need of immediate medical assistance.

We note in passing it would have been prudent for the officers to take appellant directly to the detoxification center; emergency medical treatment for persons in appellant's condition is the legislative reason for detoxification centers. Appellant's contention that the officers wanted the Intoxilyzer test first to bolster possible driving violation charges is logical, and appellant argues this cuts against the state's emergency exception argument. However, we find, based on these facts, the officers' actions in entering appellant's apartment and going into her bedroom to locate her were based on reasonable, legitimate, and genuine concerns for appellant's safety. Once having found her, observed her, and talked to her, the officers had a limited right to make a judgment call that her medical needs, now more fully known, could be met even with an intervening stop at the police station. We note the officers could have bypassed testing and brought appellant straight to the detoxification center without forfeiting their right to bring charges based on what the Reddins personally saw, what the officers personally saw, and any statements of appellant found to be admissible. "No test" DUI pursuant to Minn.Stat. § 169.121, subd. 1(a) (driving while under the influence) was available to the officers. But, on these facts, the offi-

---

1. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

cers going first to the police station and then to the detoxification center did not invalidate the search and the evidence seized.

■ Absent probable cause and exigent circumstances, warrantless in-home felony arrests have been confined to the "hot pursuit" doctrine. *Welsh v. Wisconsin*, 466 U.S. 740, 749–50, 104 S.Ct. 2091, 2097–98, 80 L.Ed.2d 732 (1984). We recognize a warrantless in-home arrest for a nonfelonious offense is rarely nonviolative of the fourth amendment. On the rare occasions where such an arrest will be upheld, the facts must be carefully scrutinized and narrowly construed. *See Welsh*, 466 U.S. at 753, 104 S.Ct. at 2099, ("[I]t is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor.")

In *Welsh*, a witness observed a car driving erratically and eventually swerving off the road and coming to a stop in an open field. After the witness stopped at the scene, the driver approached her and asked her for a ride home. The witness suggested they wait for assistance in removing or repairing the car. The driver walked away from the scene. A few minutes later the police arrived and questioned the witness, who told the officers what he had observed. The officers checked the motor vehicle registration of the car and learned it was registered to Edward J. Welsh, the defendant. The officers proceeded to Welsh's home and made an in-home warrantless arrest for DUI. *Id.*, 466 U.S. at 742–43, 104 S.Ct. at 2093–94.

The state attempted to justify the arrest in *Welsh* by: 1.) the hot pursuit doctrine; 2.) the threat to public safety; and 3) the need to preserve evidence of Welshs' blood alcohol level. The Supreme Court, however, was not persuaded. The Court found exigent circumstances did not exist and the arrest was unlawful.

■ This case is not a *Welsh* case. Here, the officers were not dispatched to appellant's apartment for the purpose of investigating a crime. Rather, they had legitimate and objective concerns for appel-

lant's safety. Also, they had more than mere suspicion of a possible crime by a yet unknown defendant. They had positive firsthand evidence of DUI, a named defendant, and the firsthand evidence would support not just "articulable suspicion" but probable cause that DUI, careless/reckless driving, and possibly other driving offenses were present.

■ Appellant argues even if the officers' entry into her apartment was lawful, the subsequent warrantless arrest was unlawful. We disagree. Once the officers were legitimately inside appellant's apartment, they spoke to her to determine whether she was in need of assistance. At this point the officers observed numerous indicia pointing to appellant's intoxication. Appellant told the officers she had been driving. The police may seize evidence without a warrant which is in "plain view." *Collidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971). That is,

> [w]here the initial intrusion that brings the police within plain view [of an incriminating article] is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate.

*Id.* The evidence of DUI came into plain view while the officers were legitimately on the premises.

The officers had eyewitness information from Reddin and a neighbor that appellant was drunk and had been driving. The officers had probable cause, lawfully obtained, to arrest appellant for DUI. *See* Minn. Stat. § 169.121, subd. 1b (A peace officer may make a lawful warrantless arrest for DUI upon probable cause, regardless of whether the violation was committed in the officer's presence.); *see also Overline v. State, Commr of Public Safety*, 406 N.W.2d 23, 26 (Minn.App.1987) (it is not necessary that officer actually observe driving conduct to provide probable cause to arrest for DUI).

Probable cause was present. The officers were legitimately on appellant's premises to help in a bona fide medical emergen-

cy. They did not need a warrant to use their own personal observations of appellant. The other evidence obtained, including the test, was lawful.

Affirmed.