STATE of Minnesota, Respondent,

v.

Gregory John BUNCE, Appellant.

No. C0–02–1433.

Court of Appeals of Minnesota.

Sept. 30, 2003.

Minn. Const. art. VI, § 10.

John M. Stuart, State Public Defender, Theodora Gaïtas, Assistant State Public Defender, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN, and John Carlson, Pine County Attorney, Pine County Courthouse, Pine City, MN, for respondent.

Considered and decided by RANDALL, Presiding Judge, HUDSON, Judge, and FORSBERG, Judge *.

## OPINION

RANDALL, Judge.

On appeal from a conviction for first-degree controlled substance offense (possession of methamphetamine), appellant argues (1) that police, who appeared at appellant's residence to check on his welfare, did not obtain voluntary consent to search the house; (2) that police, who suspected appellant of using methamphetamine, misrepresented their purpose when they told him they were looking for a shotgun out of concern that he was suicidal; and (3) that police exceeded the scope of appellant's consent when they lifted a pillow knowing it could not conceal a shotgun. Finally, appellant argues that because there was no inquiry on the record of his understanding that he was waiving his right to a jury trial, appellant is entitled to a new trial. Because appellant did not waive his right to a jury trial, we reverse and remand for a new trial. In the interests of judicial economy, we ad-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

dress the validity of the search. Because we find no error with respect to the search, we affirm the district court on that issue.

## FACTS

On September 4, 2001, Pine County Sheriff's Deputy Tom Pitzen received a call from dispatch concerning a suicide threat at appellant Greg Bunce's residence. The information regarding the threat came from Steve Smith, a deacon at the Pine City Assembly of God Church. Pitzen contacted Smith, who stated that appellant had threatened to kill himself with a shotgun. Smith also told Pitzen that appellant rented a trailer from the Assembly of God Church, and that deacons at the Assembly of God suspected appellant of using and possibly selling methamphetamine from the trailer.

Following the conversation with Smith, Pitzen went to appellant's house to investigate the situation. Because of the possible threat of a firearm, Pitzen requested backup, and Pine County Deputies Bill Juneau and Lt. Brett Grinde accompanied him to appellant's residence. The officers knocked on appellant's door, and eventually appellant answered. Pitzen questioned appellant about the suicide threats for approximately 10 or 15 minutes, and appellant assured the deputies that he was feeling fine and did not even own a shotgun. Despite his assurance, Pitzen asked appellant if they could look in the trailer in order to corroborate his assertion. Pitzen told appellant that he did not have to let them look, but if they were granted permission, the officers would only search areas where a shotgun would fit. Appellant reluctantly agreed and proceeded to show the officers the trailer.

After walking through a few rooms with appellant, the officers reached the bedroom. Pitzen asked if he could check under the bed, and appellant said yes. As he started to bend down to look under the bed, Pitzen noticed an empty baggie. Pitzen questioned appellant about it; appellant failed to give an explanation. Pitzen resumed bending down to look under the bed, and in the process, he saw another baggie on a shelf in the headboard of the bed, partially obscured by a pillow. According to Pitzen, the baggie contained a substance that looked and felt like methamphetamine. When questioned about the substance, appellant replied that it was frankincense.

The officers left the baggie in the bedroom, and appellant escorted the officers into another room. As he passed by some shelves, Pitzen noticed some rectangular strips of tinfoil, some small baggies, and some razor blades. The items could be used to package methamphetamine. When asked about the items, appellant replied that they were "just stuff."

The officers concluded that there were no guns in the house, but asked appellant for permission to field-test the substance contained in the baggie. Officer Juneau told appellant that he could refuse to allow the test and that the officers would leave the residence if requested. Appellant failed to address the request to test the suspected methamphetamine, but he did respond that he would rather the officers left. The officers complied, but told appellant that he would have to wait outside while Juneau obtained a search warrant.

The officers obtained a search warrant and proceeded to search the trailer. Although a full search of the trailer failed to turn up the shotgun or any additional drug paraphernalia, the officers arrested appellant for possessing methamphetamine. A complaint was filed charging appellant with two counts of first-degree controlled substance crimes pursuant to Minn.Stat. § 152.021, subd. 1(1) (2000) (sale), and

Minn.Stat. § 152.021, subd. 2(1) (2000) (possession). Appellant moved to suppress the evidence, arguing that it had been discovered during an illegal search. The district court denied the motion and the issue of appellant's guilt was tried to the court on stipulated facts. The court found appellant guilty of possession under Minn.Stat. § 152.021, subd. 2(1), but not guilty of sale under Minn.Stat. § 152.021, subd. 1(1). This appeal followed.

## ISSUES

I. Is appellant entitled to a new trial because he never personally waived his right to a jury trial?

II. Should the evidence seized from appellant's home have been suppressed as fruit of an unlawful search?

## ANALYSIS

### I.

Appellant argues he is entitled to a new trial because he never personally waived his right to a jury trial before the case was submitted to the trial court on stipulated facts. A defendant proceeding under *Lothenbach* must personally waive a jury trial in writing or orally upon the record in open court. *State v. Sandmoen,* 390 N.W.2d 419, 423–24 (Minn.App.1986). Respondent agrees that appellant did not waive a jury trial, and concedes a remand is in order. We reverse and remand the case for a new trial. Nonetheless, in the interests of judicial economy, we will address the validity of the search because of the effect a ruling on that issue will have on the case on remand.

### II.

Appellant argues that the evidence seized from his home should be suppressed as fruit of an unlawful search because he did not voluntarily consent to the warrantless search of his home. When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred by not suppressing the evidence. *State v. Harris,* 590 N.W.2d 90, 98 (Minn.1999) (citation omitted).

Before conducting a search of a person's residence, law enforcement must first obtain a warrant. *State v. Taylor,* 590 N.W.2d 155, 157 (Minn.App.1999). A warrant is not required when voluntary consent to enter is given. *Id.* When determining whether the consent was voluntary, a court must "examine the totality of the circumstances surrounding the search, including the nature of the encounter, the kind of person the defendant was, and what was said and how it was said." *State v. Dezso,* 512 N.W.2d 877, 880 (Minn.1994). The consent was voluntary if a "reasonable person would have felt free to decline the officer's requests or otherwise terminate the encounter." *Id.*

Here, appellant claims his consent was not voluntary because he was intimidated by the officers' presence, and he felt the officers would not leave until he allowed them to search the house. The record reflects that the officers were quite persistent in their efforts to search appellant's house. Appellant repeatedly denied the accusations that there was a shotgun in the house, while Pitzen kept reassuring appellant that the officers just wanted to make sure he was correct and that they would only search places where a shotgun may be hidden. Also, the fact that three officers were present at appellant's residence, all carrying revolvers, tends to add merit to appellant's claim that he was intimidated and that his consent was not voluntary.

However, although the officers were armed and persistent in their efforts to question appellant, there is no solid evidence that the officers coerced appellant to consent to the search. Officer Pitzen testified that appellant was informed of his rights before the search commenced. Appellant misconstrues Offices Juneau's testimony as stating that the deputies never informed appellant of his right to refuse the search until after the methamphetamine was discovered. Officer Juneau testified that *he* never informed appellant of his right to refuse the search. The district court noted that the officers testified appellant was lucid during the search. The district court is in the best position to make credibility determinations, and the district court determined that the police officers' testimony was more credible than appellant's testimony. Because the officers were armed and persistent with their requests to search the trailer, the district court could have found intimidation and suppressed the evidence. But, the court found that consent was voluntarily and freely given. It was a judgment call based on the credibility of the witnesses. We conclude the court did not err in its determination.

 Appellant also contends that police, who suspected him of using methamphetamine, misrepresented their purpose for conducting the search when they told him they were looking for a shotgun out of concern that he was suicidal. "Misrepresentations about the nature of an investigation may be evidence of coercion." *U.S. v. Turpin,* 707 F.2d 332, 334 (8th Cir.1983) (quotation omitted). Tacit misrepresentation of the purpose of a search may even rise to such a level of deception so as to invalidate a search. *State v. Schweich,* 414 N.W.2d 227, 230 (Minn.App.1987). But, an officer's failure to tell a defendant that he is suspected of a crime does not invalidate

the defendant's consent to search the house. *U.S. v. Turpin,* 707 F.2d 332, 335 (8th Cir.1983).

Both Officers Pitzen and Juneau admitted that appellant was a suspected methamphetamine user. Respondent's contention that the officers' *only* concern when they searched appellant's residence was to check on appellant's welfare is a stretch, and not credible. Nevertheless, there is no evidence that the officers affirmatively misrepresented their purpose for being on the premises. The officers were responding to a legitimate report that appellant had threatened to kill himself with a shotgun. They wanted to double check appellant's house to confirm his assertion that there was no shotgun present in the house. Although the police likely had a secondary agenda for searching the premises, the suicide concerns appear genuine. We conclude the officers did not misrepresent their purpose for conducting the search to the point of illegally coercing appellant to consent.

 Finally, appellant argues police exceeded the scope of his consent when they lifted a pillow knowing it could not conceal a shotgun. The scope of a search is limited by the terms of its authorization. *Walter v. United States,* 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980). A search that exceeds the authorized consent is unreasonable and violates the fourth amendment. *United States v. Dichiarinte,* 445 F.2d 126, 129–31 (7th Cir. 1971). A limited voluntary consent does not authorize "indiscriminate rummagings" into a person's possessions. *State v. Powell,* 357 N.W.2d 146, 150 (Minn.App.1984). But, when an officer is lawfully present in the home, evidence may be seized if it is in plain view of the officer. *State v. Campbell,* 581 N.W.2d 870, 871–72 (Minn.App. 1998) (citation omitted).

Here, the key issue concerning the baggie is whether enough of it was in plain sight, which, if it was, the police could go further. There was conflicting testimony as to whether the methamphetamine was in plain view. Officer Pitzen testified that a pillow only partially covered a baggie containing the substance, and that the substance could be seen. In contrast, appellant testified that the substance was completely hidden by the pillow and that Pitzen discovered the substance only after he moved the pillow. Ultimately, the district court is in the best position to determine the credibility of the witnesses, and the district court accepted Pitzen's testimony and rejected appellant's testimony on the "plain view" issue. We cannot conclude the court erred as a matter of law in making this determination.

The district court did not err by denying appellant's motion to suppress the evidence discovered during the search of his residence.

Respondent argues that even if appellant did not voluntarily consent to the search of his residence, the police were justified in searching for a shotgun in order to protect appellant's safety and welfare. This court may consider an alternative argument if there are sufficient facts on the record for the appellate court to consider the alternative theory. *State v. Grunig*, 660 N.W.2d 134 (Minn.2003). Here, there is little support in the record for respondent's argument that a warrantless search was justified under the emergency exception. There is no mention of this argument in respondent's memorandum of law presented to the district court following the omnibus hearing. Respondent did not raise the issue when examining its witnesses. We do not rest our decision on any alternative argument of respondent.

It can be noted that under the emergency exception to the warrant requirement, police are allowed to make a warrantless entry and search of a home when they reasonably believe that a person within is in need of immediate aid. *State v. Halla–Poe*, 468 N.W.2d 570, 572 (Minn.App.1991) (citations omitted). The need to protect or preserve life or avoid serious injury is justification for what would otherwise be illegal absent an exigency or emergency. *Id.* But, police do not have the option to go into people's homes carte blanche whenever they claim they "hear that there is a weapon inside and that someone's safety may be in question." Those things can happen. When they do, the state must prove them.

Respondent also contends that the search was justified under the independent source doctrine. Although the issue is essentially moot because we found the search to be valid, it should be noted that in determining whether the independent-source exception applies, the court must consider whether (1) the illegal information affected the judge's decision to issue the warrant, and (2) the decision to seek the warrant was prompted by the illegal observation. *Murray v. United States*, 487 U.S. 533, 542–43, 108 S.Ct. 2529, 2536, 101 L.Ed.2d 472 (1988).

Here, the state cannot satisfy either prong of the independent source test set forth in *Murray*. First, the state failed to show that the information obtained during the initial entry into appellant's home did not affect the judge's decision to grant the deputies' search warrant application. Second, the record does not show that the deputies would have obtained a search warrant without the evidence discovered during the initial search of appellant's home. Accordingly, respondent's "independent source doctrine" argument fails.

## DECISION

Appellant did not properly waive his right to a jury trial before proceeding with a *Lothenbach* hearing. We reverse and remand the case for a new trial. In the interests of judicial economy, we address the validity of the warrantless search. We conclude that appellant voluntarily consented to the search of his home, and the district court did not err by refusing to suppress the evidence.

**Affirmed in part, reversed in part, and remanded.**