*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0821**

Russelle Anthony Wech, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed May 18, 2015
Reversed
Halbrooks, Judge**

Ramsey County District Court
File No. 62-CR-10-7200

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Halbrooks, Judge; and Johnson, Judge.

**UNPUBLISHED OPINION**

**HALBROOKS**, Judge

Appellant challenges his conviction of fifth-degree controlled-substance crime and the denial of his postconviction petition, arguing that (1) the district court erred by

denying his motion to suppress evidence obtained after a warrantless entry into his home and a search incident to a warrantless arrest, (2) the postconviction court abused its discretion by summarily denying his false-testimony and newly discovered evidence claims, and (3) he received ineffective assistance of trial counsel. Because we conclude that the district court erred by denying the motion to suppress, we reverse.

## FACTS

On August 17, 2010, police officers responded to a 911 call of a "disturbed" boyfriend present at the caller's residence. The caller, A.H., also stated that there was an active warrant for her boyfriend's arrest. Upon arrival at the residence, the officers heard a man and woman engaged in a loud argument upstairs. The door was ajar, and officers entered immediately without waiting for permission and without verifying the existence of the arrest warrant.

The officers found A.H. and appellant Russelle Anthony Wech in the residence, separated them, handcuffed Wech, conducted a pat search of his person, and found a "bindle of hard pellet-like objects" in his pocket. The pills were submitted to the St. Paul Police Department Crime Laboratory, and the test results indicated that the pills contained ecstasy. The state charged Wech with fifth-degree controlled-substance crime–possession, in violation of Minn. Stat. § 152.025, subd. 2(a)(1) (2010).

Wech moved to suppress the evidence obtained by the police officers, arguing that the officers entered the residence, seized Wech, and searched his person unlawfully. The district court held a suppression-motion hearing, and Wech's intensive supervised release (ISR) agent testified that Wech violated his parole by engaging in threatening behavior

2

toward A.H. The ISR agent stated that he initiated the arrest-warrant process at 10:00 p.m. on the night of the arrest and that the warrant became active at 10:17 p.m. The arresting police officer testified that he responded to the 911 call at 10:01 p.m.,[1] entered the residence at 10:04 p.m., handcuffed Wech at 10:05 p.m., and conducted the pat search of his person immediately thereafter. The district court denied the motion to suppress, finding that, even though the warrant was not yet in place, the officers lawfully entered the residence and lawfully detained and searched Wech.

Wech consented to a stipulated-evidence trial under Minn. R. Crim. P. 26.01, subd. 4, and the district court found Wech guilty. The district court sentenced Wech to a stayed sentence of 21 months in prison and placed him on probation for a period of five years. Wech petitioned for postconviction relief, arguing that the evidence obtained after the warrantless entry, arrest, and search should have been suppressed and that he is entitled to a new trial on the grounds of false testimony, newly discovered evidence, and ineffective assistance of counsel. The postconviction court denied Wech's petition. This appeal follows.

## D E C I S I O N

Wech argues that the district court erred when it denied his motion to suppress evidence obtained after the warrantless entry into his home. "When reviewing a district court's pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's legal

---

[1] The 911 dispatcher testified that A.H. called 911 at 10:04 p.m. Regardless of the discrepancy, the district court found that the entry, arrest, and search all occurred prior to the time the warrant became active at 10:17 p.m., and the parties do not dispute this fact.

determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted).

The Fourth Amendment of the United States Constitution and article I, section 10 of the Minnesota Constitution protect against unreasonable searches and seizures. A warrantless entry into a constitutionally protected area, such as one's home, is presumed unreasonable. *Kyllo v. United States*, 533 U.S. 27, 40, 121 S. Ct. 2038, 2046 (2001); *State v. Thompson*, 578 N.W.2d 734, 740 (Minn. 1998). Absent a warrant or an exception to the warrant requirement, officers cannot lawfully enter a person's home. *Thompson*, 578 N.W.2d at 740. The state bears the burden of establishing that an exception to the warrant requirement exists. *State v. Johnson*, 689 N.W.2d 247, 251 (Minn. App. 2004), *review denied* (Minn. Jan. 20, 2005). "The exclusionary rule generally requires the suppression of evidence acquired as a direct or indirect result of an unlawful search." *State v. Lieberg*, 553 N.W.2d 51, 55 (Minn. App. 1996).

Here, it is undisputed that a warrant was not yet in place when the officers entered the residence. The ISR agent was in the process of issuing an arrest warrant, but the warrant did not become active in the system until 10:17 p.m., at least 12 minutes after the officers entered the residence. Wech contends that the state did not meet its burden of establishing that the emergency-aid exception to the warrant requirement justified the officers' warrantless entry. The state argues that it has met the emergency-aid exception, or, in the alternative, that the evidence discovered need not be suppressed because the inevitable-discovery and independent-source doctrines apply.

**Emergency-Aid Exception**

Under the emergency-aid exception, a police officer may "enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *State v. Lemieux*, 726 N.W.2d 783, 787-88 (Minn. 2007). "[P]olice must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property." *Id.* at 788. In determining whether the actions of law enforcement "meet an objective standard of reasonableness the court should ask whether the facts available to the officer at the moment of the [entry], would a person of reasonable caution believe that the action taken was appropriate." *State v. Othoudt*, 482 N.W.2d 218, 223 (Minn. 1992).

The U.S. Supreme Court and Minnesota courts have found that the emergency-aid exception justifies a warrantless entry into a home when there is evidence of physical violence or property damage or when the officers reasonably believe that someone faces imminent harm. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 406, 126 S. Ct. 1943, 1949 (2006) (holding that officers lawfully entered a residence after hearing a "tumultuous" altercation, "thumping and crashing," people yelling "stop, stop" and "get off me," and after observing one person strike another "in the face, sending the [victim] to the sink spitting blood"); *Lemieux*, 726 N.W.2d at 789 (holding that officers lawfully entered a residence while investigating a homicide, after being told that someone was in the residence that night and observing that a screen window had been torn, the window was open, and the door was unlatched); *State v. Terrell*, 283 N.W.2d 529, 532 (Minn. 1979) (holding that officers lawfully entered after responding to a call of a possible

5

homicide because they "felt that it was possible that the victim, if there was a victim, might still be alive" inside the residence); *State v. Anderson*, 388 N.W.2d 784, 787 (Minn. App. 1986) (holding that a warrantless entry was lawful when officers responded to a 911 call that the appellant "had been drinking" and he "was throwing people around," and upon arrival, the officers observed that the residence was in disarray "consistent with the officers' information that a fight had occurred"), *review denied* (Minn. Aug. 20, 1986).

Here, the officers responded to a 911 call from A.H., who stated that her "disturbed" boyfriend was at their residence. A.H. did not indicate that Wech had assaulted her or that she was afraid for her safety. Upon arrival, the officers heard a loud argument, but they did not hear sounds consistent with violent or threatening behavior. They did not hear sounds indicating that property damage or physical violence had or was occurring, and they did not hear calls for help. Nor did the officers observe damaged property or signs of a struggle.

In addition, the officers did not announce their presence or wait for someone to come to the door before entering. In warrantless-entry cases, the residents' failure to respond to officers' knocking and announcing their presence often provide reasonable grounds to conclude that an emergency is at hand. *See, e.g.*, *Lemieux*, 726 N.W.2d at 785 (noting that officers knocked and announced their presence and entered after receiving no response); *State v. Halla-Poe*, 468 N.W.2d 570, 573 (Minn. App. 1991) (noting that officers yelled, "Police! Are you okay?" and entered only after hearing no response); *Anderson*, 388 N.W.2d at 785, 787 (relying on the facts that the officers knocked,

6

announced, waited several minutes for a response, and entered only after receiving no response and after observing that the residence was in disarray).

We conclude that the officers here did not have enough information to reasonably believe that entry was necessary to "render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Lemieux*, 726 N.W.2d at 787-88. We appreciate that the role of police officers "includes preventing violence and restoring order, not simply rendering first aid to casualties," *Stuart*, 547 U.S. at 406, 126 S. Ct. at 1949, but we conclude that the specific facts of this case do not establish reasonable grounds for an officer to have believed that A.H. faced imminent harm. Therefore, the emergency-aid exception to the warrant requirement is not met under the facts of this case.

**Inevitable-Discovery or Independent-Source Doctrines**

Unlawfully obtained evidence need not be suppressed if the state meets its burden of proving that either the inevitable-discovery or independent-source doctrines apply. *See State v. Barajas*, 817 N.W.2d 204, 219-20 (Minn. App. 2012), *review denied* (Minn. Oct. 16, 2012). Because the state argues that the inevitable-discovery or independent-source doctrines justified admission of the evidence, we next consider whether the unlawfully obtained evidence falls under the "exceptions to the exclusionary rule when the police inevitably would have obtained the evidence absent any misconduct or could have obtained the evidence based on information independent of their illegal conduct." *Id.* at 219. "If the state can establish by a preponderance of the evidence that the fruits of a challenged search ultimately or inevitably would have been discovered by lawful

7

means, then the seized evidence is admissible even if the search violated the warrant requirement." *State v. Licari*, 659 N.W.2d 243, 254 (Minn. 2003). Similarly, the independent-source doctrine "allows the introduction of evidence obtained pursuant to a warrant that is genuinely independent of a prior unlawful search and would have been obtained even if what actually happened had not occurred." *Lieberg*, 553 N.W.2d at 55 (quotation omitted).

In this case, as previously stated, the arrest warrant became active at 10:17 p.m., 12 minutes after Wech's arrest. At 10:17 p.m., the officers could have executed the warrant, entered the residence, made a valid arrest, and lawfully discovered the pills in a search incident to Wech's warranted arrest. But without an exception to the warrant requirement, the officers were required to wait until they had a valid warrant. In those 12 minutes, Wech could have left the residence, emptied his pockets, flushed the pills, or taken the pills. Therefore, we cannot conclude that the pills would have "ultimately or inevitably" been discovered by lawful means or that the pills could have been obtained independent of the illegal and warrantless entry into the residence.

At oral argument, the state argued that because the ISR agent had the authority to arrest Wech without a warrant and because the ISR agent had decided to issue an arrest warrant at 10:00 p.m., the police officers had authority to enter the residence, seize, and search Wech at 10:05 p.m. But this argument was not briefed, and the state could not direct us to any caselaw that would support this argument. We, therefore, decline to address the state's new argument. *See State v. Tracy*, 667 N.W.2d 141, 145 (Minn. App.

8

2003) (declining to address an argument raised for the first time by the state at oral argument).

Because the warrantless entry into his home was unconstitutional and the evidence recovered as a result of that entry should have been suppressed, we reverse Wech's conviction. Our resolution of this issue makes it unnecessary to reach Wech's other arguments.

**Reversed.**