*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1209**

State of Minnesota,
Respondent,

vs.

David Irvin Hudson,
Appellant.

**Filed June 20, 2016
Affirmed
Kirk, Judge**

Clay County District Court
File No. 14-CR-14-3012

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, Minnesota; and

Brian J. Melton, Clay County Attorney, Moorhead, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Larkin, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

Challenging his conviction of first-degree driving while under the influence (DUI) and first-degree test refusal, appellant argues that the district court erred by refusing to

suppress evidence obtained after a police officer entered appellant's garage without a warrant. Because we conclude that the officer's warrantless entry into the garage was justified under the emergency-aid exception, we affirm.

**FACTS**

Appellant David Irvin Hudson was charged with first-degree DUI and first-degree test refusal after a police officer, acting on a witness's 911 call, entered appellant's garage without a warrant and found appellant intoxicated in his vehicle. Appellant moved to suppress the evidence resulting from the warrantless search, including his physical presentation of significant alcohol intoxication and two vodka bottles found in his vehicle. Information from the criminal complaint and witness testimony from the contested omnibus hearing is summarized below.

A little after 7:00 p.m. on September 11, 2014, J.L. was driving eastbound on Interstate 94 in Moorhead. He called 911 and informed dispatch that he was following a blue Oldsmobile Alero and that he believed the driver was under the influence of alcohol. J.L. reported observing the Alero swerve back and forth and cross both the center divider line and the fog line. He also reported that, at one point, he observed all four of the Alero's tires completely enter the shoulder.

Moorhead Police Officer Brandon Desautel met J.L. in person at an intersection. J.L. gave Officer Desautel a picture of the Alero's license plate, which he had taken on his cellphone while driving, and provided a description of both the driver and the vehicle.

Officer Desautel entered the license plate information into his mobile computer system and retrieved a picture of the registered owner of the Alero and the driver's address.

2

He showed the picture to J.L., who confirmed that he was "95 percent sure" that was the driver of the Alero. Officer Desautel drove to the address of the registered owner, which was located at an apartment complex. Officer Desautel spoke with appellant's roommate, who stated that he believed appellant was not at home, but that it was possible the Alero was parked in the garage downstairs. The roommate provided Officer Desautel with the garage number, and Officer Desautel walked over to the garage, where he found the garage door open, and a vehicle matching the description and bearing the same license plate number as the one he saw in J.L.'s cellphone photograph. The key was in the ignition, but the Alero's engine was not running.

Standing outside of the garage, Officer Desautel was able to see a man, who was later determined to be appellant, seated in the driver's seat and that he was bent forward and did not appear to be awake. At the contested omnibus hearing, Officer Desautel testified that he walked into the garage "to check on [appellant's] welfare and investigate the situation that I had originally been dispatched to." He noticed that appellant was "bent forward at the waist with his hands down at his side." He described appellant as having "a cigarette in his mouth completely soaked with saliva to the point where it was dripping onto his lap" and that appellant appeared to be unconscious. Officer Desautel knocked multiple times on the driver's side window before appellant lifted up his head and looked at him.

When appellant opened the vehicle's driver-side door, Officer Desautel smelled "an overwhelming strong odor of alcohol" and saw that appellant's eyes appeared "bloodshot and glossy." Appellant's speech was slurred. Officer Desautel observed that, as appellant

3

exited the vehicle, he was very unsteady on his feet and had to use the vehicle for balance. On cross-examination, appellant did not deny that he had consumed alcohol that evening. Officer Desautel asked appellant to perform field sobriety testing, which he refused to do. Officer Desautel arrested appellant for DUI, and transferred him to the law enforcement center. After being informed of the implied consent advisory, appellant refused to take a breath test. During a search of appellant's vehicle, officers found two 1.75 liter bottles of vodka where one bottle was completely empty and the other bottle was a quarter full.

On October 19, appellant moved to suppress evidence obtained from Officer Desautel's warrantless entry of the garage on the grounds that he had a reasonable expectation of privacy in the garage and that exigent circumstances were not present. After a contested omnibus hearing, the district court denied appellant's motion concluding that appellant did not have a reasonable expectation of privacy in the garage, and in the alternative, Officer Desautel's warrantless entry was lawful under the emergency-aid exception. After a jury trial, appellant was found guilty of first-degree DUI and first-degree test refusal, and was sentenced to 75 months in prison, with credit for 229 days.

This appeal follows.

## D E C I S I O N

"When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999) (citing *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992)). When the facts are undisputed, this court independently reviews the facts and determines, as a matter

4

of law, whether the evidence needs to be suppressed. *In re Welfare of B.R.K.*, 658 N.W.2d 565, 571 (Minn. 2003).

The Fourth Amendment of the United States and Minnesota Constitutions respectively protect an individual from unreasonable searches and seizures. U.S. Const. amend. IV, Minn. Const. art. I, § 10. Evidence discovered by exploiting previous illegal conduct is inadmissible as fruit of the poisonous tree. *State v. Bergerson*, 659 N.W.2d 791, 797 (Minn. App. 2003) (quotations omitted).

Implicit in his appeal of the officer's warrantless entry into his garage, appellant asserts that he enjoys a reasonable expectation of privacy in his garage. Respondent State of Minnesota argues that appellant failed to establish that he has a reasonable expectation of privacy in his garage because the record indicates that the garage "was not so immediately and intimately connected to his apartment as to qualify as curtilage," and that the garage door was impliedly open to the public, thus erasing any Fourth Amendment protections.

Curtilage, which is "the land immediately surrounding and associated with the home," is "considered part of [the] home for Fourth Amendment purposes." *Oliver v. United States*, 466 U.S. 170, 180 104 S. Ct. 1735, 1742 (1984). We held in *Tracht v. Comm'r of Pub. Safety* that a home's curtilage includes a garage that is attached to the house. 592 N.W.2d 863, 865 (Minn. App. 1999), *review denied* (Minn. July 28, 1999).

Here, we are unable to address the merits of respondent's argument because the record does not establish whether appellant's apartment was connected to the garage.

However, we conclude that Officer Desautel's warrantless entry into the garage falls within the emergency-aid exception. The emergency-aid exception is one exception to the warrant requirement that allows law enforcement officers, in pursuing "a community-caretaking function," to "'enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'" *State v. Lemieux*, 726 N.W.2d 783, 787-88 (Minn. 2007) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947 (2006)). Under the emergency-aid exception, the state carries the burden of proving that police conduct was justified under the exception, and we consider whether there was a reasonable basis, close to probable cause, to associate the emergency with the area or place to be searched. *State v. McClain*, 862 N.W.2d 717, 721 (Minn. App. 2015). We must determine "whether the officers are motived to *enter* as criminal investigators or in the officers' role as community caretakers." *Id.*

We note that the fact that Officer Desautel testified that he had two subjective motivations for entering the garage, including checking on appellant's welfare and investigating the situation, does not per se violate the Fourth Amendment. "[A] warrantless search conducted during a criminal investigation does not necessarily preclude application of the emergency-aid exception so long as *one* of the motives for the warrantless search corresponds to an objectively reasonable emergency." *Lemieux*, 726 N.W.2d at 790 (emphasis added).

Here, there are a number of facts confirming that Officer Desautel had a reasonable basis to believe there was an emergency at hand where he could enter the garage without a warrant. *See State v. Halla-Poe*, 468 N.W.2d 570, 573 (Minn. App. 1991). First, he was

6

directed to appellant's house based on a credible witness's observation of appellant driving erratically on the interstate and streets. *See State v. Anderson*, 388 N.W.2d 784, 787 (Minn. App. 1986) (police relying on information from private citizen around the time of the warrantless entry that suspect had been drinking, "was throwing people around," and that suspect's daughter was "scared [and] frantic"), *review denied* (Minn. Aug. 20, 1986); *Halla-Poe*, 468 N.W.2d at 573 (police relying on statement from neighbor who observed appellant driving erratically and called police concerned about appellant's highly intoxicated condition).

Second, as Officer Desautel stood outside the garage, an area impliedly open to the public, he clearly saw appellant in the driver's seat, that he was "bent forward," and that he "did not appear to be awake." Appellant's physical presentation as he sat in the Alero is consistent with someone who could need immediate medical treatment. Third, Officer Desautel acted as if he believed that appellant may be experiencing a medical emergency by entering the garage without delay and attempting to rouse appellant by repeatedly knocking on the driver's side window.

**Affirmed.**